1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              WESTERN DIVISION

4                  - - -

5    HONORABLE FERNANDO M. OLGUIN, DISTRICT JUDGE PRESIDING

6

7    UNITED STATES OF AMERICA,        )
                                      )
8             Plaintiffs,             )
                                      )
9                                     )
                                      )
10            vs.                     )  No. CR 15-00206-FMO
                                      )
11                                    )
                                      )
12   NAYAR JOSUE BELTRAN CAMPOS,      )
                                      )
13            Defendant.              )
     _____)

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17              *SENTENCING HEARING*

18            LOS ANGELES, CALIFORNIA

19          THURSDAY, OCTOBER 27, 2022

20   _____

21              MARIA R. BUSTILLOS
              OFFICIAL COURT REPORTER
22                C.S.R. 12254
             UNITED STATES COURTHOUSE
23             350 WEST 1ST STREET
                  SUITE 4455
24        LOS ANGELES, CALIFORNIA 90012
                (213) 894-2739
25

1               **A P P E A R A N C E S**

2

3

4       **ON BEHALF OF THE PLAINTIFFS,**
        **UNITED STATES OF AMERICA:**       OFFICE OF THE UNITED STATES
5                                           ATTORNEY
                                            BY:  CHRISTOPHER C. KENDALL,
6                                           ESQ.
                                            312 NORTH SPRING STREET
7                                           SUITE 1400
                                            LOS ANGELES, CA 90012
8                                           (213)894-2576

9

10      **ON BEHALF OF THE DEFENDANTS,**
        **NAYAR JOSUE BELTRAN CAMPOS:**     DAVID J.P. KALOYANIDES, A
11                                          PROFESSIONAL LAW CORPORATION
                                            BY:  DAVID J.  KALOYANIDES,
12                                          ESQ.
                                            111 WEST OCEAN BOULEVARD
13                                          SUITE 400
                                            LONG BEACH, CA 90802
14                                          (213)623-8120

15    ALSO APPEARING:  MANENA FAYOS (SPANISH INTERPRETER)

16

17

18

19

20

21

22

23

24

25

1

# **I N D E X**

2

PAGE

SENTENCING HEARING:                                                    4

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; THURSDAY, OCTOBER 27, 2022

2                              -o0o-

3                  (COURT IN SESSION AT 2:16 P.M.)

4          THE COURTROOM DEPUTY:  Calling case

5    CR 15-00206-FMO:  *United States of America v. Nayar*

6    *Josue Beltran Campos.*

7          Counsel, please state your appearances.

8          MR. KENDALL:  Good afternoon, Your Honor.

9    Chris Kendall on behalf of the United States.

10         THE COURT:  Good afternoon.

11         MR. KALOYANIDES:  Good afternoon, Your Honor.

12   David Kaloyanides with Mr. Beltran Campos, who's present

13   before the Court, in custody.

14         THE COURT:  Okay.  Can I ask the interpreter to

15   please state her name for the record.

16         THE INTERPRETER:  Good afternoon, Your Honor.

17   Manena Fayos, certified interpreter in Spanish, with an

18   oath on file.

19         THE COURT:  Okay.  Why don't we get started.

20   Defendant previously pled guilty before me on

21   June 2nd, 2022.  I've read and considered the following

22   documents:  The presentence report filed on

23   July 14th, 2022, and the two addendums to the report,

24   the Government's sentencing papers filed on

25   July 18th, 2022, and defendant's sentencing papers filed

1    on October 14th, 2022.  And I'll note for the record

2    that -- and we'll file these on the docket under seal

3    later -- that some paperwork was handed to me, which I

4    briefly reviewed on behalf of defendant in support of

5    his sentencing position that I have here.  And we'll

6    make it part of the record later.

7            MR. KALOYANIDES:  Thank you, Your Honor.  And I

8    apologize for the delay in getting them.

9    Mr. Beltran Campos attempted to mail them to me, but

10   they were returned to him.  I'm not sure what happened

11   there.  And so today was the only opportunity I had

12   to --

13           THE COURT:  That's fine.  We'll add it to

14   the -- to the docket later.

15           MR. KALOYANIDES:  Thank you.

16           THE COURT:  Mr. Kendall, other than what you

17   stated in your sentencing papers, do you want to contest

18   or change anything in the presentence report?

19           MR. KENDALL:  No, Your Honor.

20           THE COURT:  Do you have anything you want to

21   present on behalf of the Government at this time or

22   would you rather wait to respond to Defense counsel?

23           MR. KENDALL:  I think I'd rather wait to

24   respond, Your Honor.

25           THE COURT:  Okay.  Mr. Kaloyanides, have you

1    and your client read and discussed the presentence

2    report?

3            MR. KALOYANIDES:  Yes, Your Honor.

4            THE COURT:  Did you explain the contents of the

5    report to your client?

6            MR. KALOYANIDES:  I did.

7            THE COURT:  Do you have any concerns about his

8    ability to understand the report?

9            MR. KALOYANIDES:  No.

10           THE COURT:  Other than what you stated in your

11   sentencing papers, do you want to contest or change

12   anything in the presentence report?

13           MR. KALOYANIDES:  Nothing in addition.

14           THE COURT:  Do you have anything further you

15   want to present on behalf of your client at this time?

16           MR. KALOYANIDES:  Nothing in addition,

17   Your Honor, but if the Court would allow me to highlight

18   some points?

19           THE COURT:  Yes, go ahead.

20           MR. KALOYANIDES:  There's kind of two aspects

21   here, and -- and in part, how we proceed will be

22   determined on whether or not the Court finds that

23   Mr. Beltran Campos was, in fact, subject to the

24   leadership or supervisor enhancement, there might be an

25   opportunity to consider whether or not he would be

1    safety-valve eligible but for that.  The Government and

2    I disagree on two factors, whether or not he has fully

3    provided the information as required, but the first

4    preventing or hindering factor is the supervisor role

5    enhancement.  As I stated in the papers, the facts just

6    don't support that enhancement -- the interpretation of

7    the facts.  And we don't disagree with what the facts

8    are as to his conduct, but the interpretation that

9    Probation and the Government have made based on that

10   conduct is nothing different from as I mentioned:  The

11   middleman, the broker, somebody who was arranging for

12   two parties to engage in a drug transaction.  The mere

13   fact that somebody tells another person to go and

14   deliver an order is not the kind of control that the

15   Guidelines require and that the case law requires to

16   find some sort of supervisory position.  Now, I've

17   stated all of this in the papers, but I wanted to

18   highlight that.

19            THE COURT:  Yeah, and you did state all that in

20   the papers.  And the only reason I -- I want to

21   interrupt you, is that you didn't frame the argument

22   as -- and to me, that's a much more serious argument --

23   as to whether or not this affects his safety-valve

24   eligibility.  The way I read the argument was that, you

25   know, he's not quite this.  He's this.  So he should

1    have a lower -- a lower Guideline range, but it doesn't

2    affect the statutory minimum as far as that goes.

3    That's the way I read the argument.

4            MR. KALOYANIDES:  And that is how it was

5    couched.  I just want to alert the Court that if the

6    Court is going to -- there's two ways I think that the

7    Court can proceed here.

8            THE COURT:  Okay.

9            MR. KALOYANIDES:  The Court can say that, well,

10   I think that the evidence would suggest

11   Mr. Beltran Campos is a supervisor of some kind, but in

12   the Court's discretion isn't going to apply it in the

13   calculation of the Guidelines.  I think the Court has

14   the ability to say that.  It's a different thing to

15   say -- and then that would affect the total offense

16   level under the Guidelines -- we haven't even gotten to

17   3553(a) yet.  It's a totally different analysis if the

18   Court says the evidence clearly does not support the

19   finding; and, therefore, he is not a supervisor.  He

20   does not qualify for that.  That then would remove the

21   block to the potential safety valve.  We still have a

22   problem with the proffer.  I'll be straightforward with

23   that.  The Government and I disagree as to the full

24   scope of what he would have to -- what information he

25   would have to provide.  So we still have that hurdle;

1    but I just wanted to alert the Court that there might be

2    this issue, depending on how the Court rules on the role

3    enhancement.

4          Beyond that, the only other point I really want

5    to stress, both under a Guideline analysis and a 3553(a)

6    analysis, is the clear abdication that the Sentencing

7    Commission committed by when it created the

8    methamphetamine Guidelines, that they just don't apply

9    the way they originally were intended.  Purity and

10   quantity no longer can be said to be linked to

11   culpability.  And, again, I've provided extensive

12   briefing on this point; but I think the court -- I think

13   all the courts need to send a message to Congress by

14   saying, this is a categorical policy disagreement we

15   have because this no longer applies.  And until we start

16   having more and more courts say that, which we are, but

17   more and more courts coming out and declaring that

18   policy disagreement, I don't think we're going to see a

19   meaningful change either in the Commission's work or

20   even Congress has to step in to order the Commission to

21   review the distinction between -- or -- or the

22   culpability analysis based on purity and quantity.  And

23   so that's the only other point I wanted to highlight.

24   All of those factors, as well as everything else that

25   I've put in the brief, considering Mr. Beltran Campos'

1    background, the enormous stress that this case is having

2    on his children, the Court is well-aware that

3    Mr. Campos' wife is also in the case; has pled guilty in

4    the case; is looking at potential prison time in the

5    case.  And while every time we have a defendant who

6    commits an offense, it affects more than just that

7    defendant.  It affects the family.  And unfortunately,

8    children, whether minors or young adults, always bear

9    the brunt.  It is a factor that I want the Court to

10   consider.  And if we are stuck with the mandatory

11   minimum, that's all we should be stuck with.  And unless

12   the Court has specific questions, I'll submit on my

13   brief.

14              THE COURT:  No questions, no.

15              Mr. Kendall....

16              MR. KENDALL:  I'll start with the math

17   Guidelines because I know -- I've been in this courtroom

18   before.  So I want to address this one head on.  So in

19   footnote one, I actually laid out the Government's

20   position on this.  And I'm sure the Court has read it,

21   but just really to highlight it:  So we get to an

22   offense level of 36 based on 3,567 grams of

23   methamphetamine.  That's an actual amount that was

24   seized.  In addition to that, there were communications

25   about 15 pounds of methamphetamine.  And then we don't

 1    know if it was pure or not.  I suspect it was close to

 2    a hundred percent pure, because for all the reasons we

 3    shouldn't consider purity according to the Defense, it

 4    always is, especially in Mexico.  So even if you just

 5    looked at it as a mixture and substance amount at

 6    15 pounds, we still get to an offense level of 36.  And,

 7    in fact, actually if you add those two amounts together,

 8    you get to a 38; but here, I'm trying to be generous

 9    and -- and take the rule of lenity into consideration,

10    there just isn't a scenario where we should have

11    anything less than an offense level of -- a base offense

12    level of 36 here.  So I do hope that the Court considers

13    those other conversations, even though we didn't seize

14    those particular drugs.  This isn't someone who just

15    happened to sell 50 grams of methamphetamine, and that's

16    the only thing they ever did.

17            So next, with the -- with respect to the stress

18    on the children, several years ago, I offered this

19    defendant the opportunity to cooperate.  And one of the

20    choices I gave him was if he could put us in touch with

21    his ex-wife so I could talk with her and have her

22    self-surrender to the United States so that I wouldn't

23    have to extradite her so she'd be stuck in Mexican

24    prison.  He decided not to do that.  So instead of

25    allowing me to get this woman, who he put into this

```
1    criminal enterprise, to self-surrender so she would

2    never have to serve a day in jail, he didn't do that.

3    So the reason the kids are without their mom right now

4    is because of him.  I fully suspect and -- you know, at

5    her initial appearance, she said that she wanted to

6    plead guilty -- I actually had to think about if you

7    actually do that at an initial appearance.  She's the

8    exact opposite of this defendant.  She's accepted

9    responsibility immediately.  So any harm to the

10   children, I think could be considered with respect to

11   her, but definitely not with respect to this defendant.

12           The safety valve, I agree is -- is a

13   significant issue in this case.  I disagree that it

14   should be as significant, given the extraordinarily high

15   Guidelines here.

16           I certainly think he has an aggravating role.

17   Again, in the -- I believe it's footnote two, I lay out

18   just with respect to Sanchez Rocha, some of the

19   descriptions used in the PSR.  So arranging with

20   Carliyos deliver, instructing Sanchez Rocha to call

21   another person, telling Sanchez Rocha to deliver

22   8 pounds of methamphetamine.  These are exactly the type

23   of active direction terms that do define someone

24   supervising someone else; but, of course, it isn't just

25   Sanchez Rocha.  The Court today sat through a change of
```

```
 1   plea -- and I know the plea agreement refers to
 2   co-conspirator 1, co-conspirator 2 -- I believe that
 3   co-conspirator 1 in that plea agreement is this
 4   defendant.  You can certainly line up the factual bases.
 5   Everything she was doing was at this defendant's
 6   direction.  She wasn't just picking up and dropping off
 7   drug proceeds at a bank because that was like a fun
 8   thing for her to do.  She was doing it because this
 9   defendant was telling her to do that.  This is exactly
10   the kind of defendant that is responsible for the
11   couriers -- for -- for Ms. Martell Obeso, these people
12   getting involved in the criminal enterprise.  Throughout
13   this case, the Government has agreed with minor roles.
14   Sometimes we've disagreed with the Court as to what a
15   particular defendant should get, but this defendant is
16   at the top of the case.  He's not defendant 1, 2, or 3.
17   They're still at large in Mexico, but he is on par with
18   them.  And just even the fact he was in Mexico directing
19   the activities of people in the United States shows that
20   he was a manager of others.  So I firmly believe he's --
21   he has an aggravated role.  And we're not even
22   advocating for the plus four, leadership, just the plus
23   three for being a manager in a conspiracy involving five
24   or more people.
25            And I apologize that I'm talking fast to the
```

1    court reporter.  I told her I'd try to do better this

2    afternoon.

3          With respect to the proffer, the Defense

4    counsel said that we had a disagreement about the full

5    scope of a safety-valve proffer.  I do think that is

6    part of it.  Defendant previously attempted to do a

7    safety-valve proffer in this case.  During that time, he

8    refused to talk about some topics, including

9    Ms. Martell Obeso, which wouldn't make it a complete

10   proffer.  But at that time, he maintained that he was

11   never involved with any drug distribution at all.  So,

12   obviously, that's just not true.

13         I don't have any reason to believe he would be

14   fully truthful if we did meet with him, but I don't

15   think it even matters, because I don't think he

16   qualifies under the leadership enhancement.  Otherwise,

17   you know, I think we've laid out in our position.  I

18   think the PSR very well describes his involvement of

19   both, in the drug trafficking and money laundering

20   operations, in this case.  And I would stress to the

21   Court that this isn't the ordinary kind of defendant

22   that is presented before the Court.

23         THE COURT:  Okay.  Mr. Kaloyanides, would you

24   like to respond?

25         MR. KALOYANIDES:  Briefly, Your Honor.

1              THE COURT:  Okay.

2              And I won't belabor any of the points; but,

3     again, I want to emphasize what is required is not just

4     direction, but it's the control.  That's what the cases

5     have said must be the focus in determining whether a

6     role enhancement should be applied.  It's control over

7     another, not just telling them what to do.  And what we

8     see in the facts here is a lot of discretion was given

9     to those who were told to deliver.  You make

10    arrangements with the person.  Here's the phone number.

11    You take care of it.  That's not the kind of control

12    that I think warrants, particularly in this case.  And

13    it's not the level of his involvement.  Again, for

14    the -- you can have someone who's integral, who absent

15    that person, the -- the conspiracy would fall apart.

16    That doesn't make them eligible for the enhancement.

17    Again, it's who are they controlling.  And that's really

18    what the cases focus on.  Even if the Court finds that

19    the -- the additional quantities that the Government

20    suggests were in the phone calls, even if the Court

21    finds that the calculation that the PSR determined is

22    his total offense level is correct, we still come back

23    to the 3553(a) factors call for no more than a mandatory

24    minimum sentence here.  No other defendant who has been

25    sentenced received more than 120 months.  And most

1   received far less.  So we do have the question of the

2   235-month sentence being a gross disparity from all the

3   other sentences here.  There's no question it's

4   Mr. Beltran Campos' conduct that has caused harm to his

5   family.  And he acknowledges that.  And we're not trying

6   to say that it was something he didn't do.  My point is,

7   the fact that these innocent children are being affected

8   is something the Court can and should take into account

9   in determining what is the appropriate sentence.  Again,

10  you know, for someone who has no criminal history that

11  we could determine, 120 months is a very long sentence.

12  Hopefully their mother will be released quickly and

13  returned to Mexico; but, again, they will be without

14  their father.  And that is something I'm asking the

15  Court to reflect on in making the determination.

16          Thank you.

17          MR. KENDALL:  Very briefly, Your Honor.

18          So Defense counsel just talked about control.

19  Defendant provided Tovar's number to Sanchez Rocha and

20  instructed him to call Tovar.  This isn't, Sanchez

21  Rocha, just do whatever you want.  It's telling him

22  to -- specifically who to call.  He told Sanchez Rocha

23  to deliver 8 pounds of methamphetamine to Tovar.  This

24  isn't, you know, go to the U.S., find someone to give

25  the drugs to.  It's telling people where to go, who to

1    meet with.  That's the kind of direction that makes drug

2    conspiracies work.  Without that direction, it would be

3    chaos.  So it's an essential part of all that.

4            There is one other thing I want to add that's

5    unrelated to all this.  There's a point made in the

6    Defense papers about Mr. Beltran Campos having been

7    arrested in Mexico, whether or not, he should get credit

8    for that time.  He should get credit for that time if he

9    was arrested based on this charge, which he was.  He

10   was -- and just so it's in the record, which matters for

11   BOP's calculation, nothing that the Court needs to

12   consider.

13           THE COURT:  Uh-huh.

14           MR. KENDALL:  That was on July 19th, 2018,

15   according to an e-mail that I received.  So to the

16   extent that that comes up with the Bureau of Prisons --

17   and I will work with Defense counsel to make sure that

18   they have that information, as well when it comes time

19   to sentence him -- or to --

20           THE COURT:  So that's -- the date was when?

21   July --

22           MR. KENDALL:  July 19th, 2018.

23           THE COURT:  Okay.

24           MR. KALOYANIDES:  And I appreciate that,

25   Your Honor.  And that was my concern, is that without

```
 1    some specific information in the PSR, I didn't want the
 2    BOP to think that there wasn't an issue of time-served
 3    in Mexico, because yes, he would get credit for that
 4    time.  And I'm not sure what is necessary for the BOP.
 5    But I appreciate that Government counsel has put that on
 6    the record, and then we'll work with the BOP as
 7    necessary, but I just wanted that to be noted for the
 8    purposes of their calculation.  I know it's not
 9    something that the Court gets involved in.
10            MR. KENDALL:  And I've dealt with this matter
11    before in other extradition cases.  It really is just a
12    matter of Defense counsel -- and I'm happy to help
13    facilitate this -- being in touch with the Bureau of
14    Prisons and providing this information.  They do all
15    these calculations.  I think it's in Houston or
16    somewhere in Texas that they do all this.  So truly
17    however I can help to do that, I'm happy to do so.  I
18    don't want him to serve extra time and not get credit
19    for the time in Mexico.  That just would not be fair.
20    So....
21            THE COURT:  Okay.  Mr. Campos, did you review
22    the presentence report with your attorney?
23            THE DEFENDANT:  No -- you mean, if I
24    reviewed --
25            THE COURT:  The presentence report, did you go
```

1    over it with him?  Did you discuss it?

2            THE DEFENDANT:  Just a little -- just only what

3    he told me.

4            THE COURT:  Okay.  And did he -- do you need

5    more time to review it with him, because we can -- we

6    can put this off for another day if you need more time

7    to review it.

8            MR. KALOYANIDES:  If I may, Your Honor, we were

9    doing our consultations with McFarland, the facility

10   where Mr. Beltran Campos is located by Zoom, and I had

11   an interpreter.  And so he did not have a copy.  So we

12   were translating it.  And he asked me just to go over

13   the pertinent parts.  So it was not word for word

14   translated at his request, but we went over what the

15   findings were, what they meant, and what our arguments

16   would be.

17           THE COURT:  Do you understand what your lawyer

18   just said?  So you understand -- do you have the overall

19   gist of what was in the Pretrial Service's report?

20           THE DEFENDANT:  I understand very little.  In

21   fact, I asked him what are the arguments that you will

22   present on my behalf.

23           THE COURT:  Yeah.

24           THE DEFENDANT:  And he was just giving me an

25   argument, and I was asking him why are you giving me an

```
 1   argument.  I even pressured him --
 2           THE INTERPRETER:  Correction by the
 3   interpreter.  I provided him.
 4           THE DEFENDANT:  -- with a motion and I asked
 5   him to file it, and he said he couldn't do it.
 6           THE COURT:  He may have -- he filed a very
 7   comprehensive sentencing brief on your behalf that's
 8   very thorough, and he made several arguments in there.
 9   And honestly, a lot of them I am going to adopt as -- I
10   was thinking of adopting as part of the sentencing, but
11   it's up to you, we can put this off, but if we put this
12   off, it's going to be -- you know, it's going to be a
13   few months because we're really backed up right now.
14   So -- but I want to make sure you had the time to review
15   everything.  And if you want to discuss the pretrial
16   service's report again with your attorney, we can do it.
17   Maybe I can arrange something for the marshals and the
18   interpreter since the interpreter is here to discuss it
19   with you here today.  And we'll come back.  And if we
20   get an opening soon, we'll try to fit you in.  So what
21   do you want to do?
22           THE DEFENDANT:  Your Honor, since the last time
23   I spoke with you, when I was told that we would see you
24   here in August, I was very aware that we would meet here
25   again in August.  I don't know why these things have
```

UNITED STATES DISTRICT COURT

1    happened the way they have.

2        THE COURT:  That has more to do with the

3    Court's schedule.  I was pretty much not unavailable the

4    month of September for a variety of reasons.  And this

5    is the first time in October that we could fit you in.

6    We tried to fit you in last week, but I was out -- I was

7    out sick last week.

8        THE DEFENDANT:  I don't want to take anymore of

9    your valuable time.  There's been a long time.  I've

10   spent a long time and I was ending up --

11       THE COURT:  Okay.

12       THE DEFENDANT:  I'm ready.

13       THE COURT:  Okay.  Then let me ask you:  Do you

14   have anything you want to say before I impose

15   sentencing?  This is your opportunity to explain -- to

16   tell me anything you want about -- that you want me to

17   consider in the sentence I impose.

18       THE DEFENDANT:  Yes, yes, if you would allow

19   me.

20       THE COURT:  Okay.

21       THE DEFENDANT:  First of all, thank you very

22   much for allowing me to speak.  One of the things that

23   the U.S. attorney said that I was not being supportive,

24   and I am being supportive of him.  And I could not

25   decide -- I could not decide on behalf of either people,

```
 1    including the mother of my children.  I spoke with her,

 2    and I told her what the U.S. attorney had told me.  She

 3    said to me, you know what?  I don't think it's fair.

 4    And I said, yeah, but that's what he's proposing to me.

 5    So at some point, I told this to the prosecutor and also

 6    to the attorney I had before that I could not make

 7    decisions on behalf of other people.

 8            What I want to tell you is a few words that I

 9    have written down here, if you will just allow me.

10            THE COURT:  Go ahead.

11            THE DEFENDANT:  Your Honor, Fernando Olguin,

12    thank you for giving me this opportunity to say to you a

13    few words to the court and to society regarding my big

14    remorse and my big apology for the bad actions that I

15    committed.  For that reason, I am before you today to

16    receive my sentence.  During this time that I have been

17    in custody, I have comprehended and understood that in

18    this life making bad decisions can only drive you to

19    death or to jail.  Not only that, but you also hurt

20    those people close to you, the ones you love, mentally

21    and emotionally.  It's very difficult not to be with

22    them on holidays, especially during situations where

23    there is illness.  That is affecting me mentally.  I'm

24    asking you for a bit of consideration in my sentence.

25    Like any other human being, we all make mistakes.  And
```

1    from those mistakes, we learn in order to become a

2    better person.  Thank you very much.

3         THE COURT:  Okay.  Except as otherwise stated

4    during this hearing, I find the presentence report to be

5    accurate and correct.  And I adopt the report which is

6    hereby incorporated into this proceeding.  Based on the

7    presentence report and the information filed by the

8    parties, I find the information in the record is

9    sufficient for the Court to meaningfully exercise its

10   sentencing authority in accordance with 18 U.S.C.

11   Section 3553(a).  Defendant pled guilty to Count 1 of

12   the indictment which charged him with conspiracy to

13   import controlled substances, in violation of

14   21 U.S.C. Section 963.  The Sentencing Guidelines are

15   the starting point in the initial benchmark in the

16   Court's analysis.  I have consulted and taken into

17   account the November 2021 edition of the Guidelines.

18   Based on the plea agreement and the record before the

19   Court, the Court calculates the advisory Guideline range

20   as follows:  The defendant's base offense level is 36,

21   pursuant to Sections 2(d)1.1(a)(5), (c)(2) of the

22   Guidelines.  Defendant contends that the base offense

23   level should be 32 because the Guideline offense

24   calculation for methamphetamine is not based on any

25   empirical data that shows a connection between quantity

and purity and culpability; however, the Court will

consider this issue and address in assessing whether a

variance is warranted in this case.

Pursuant to Section 2D1.1(b)(5), there is a

two-level increase for conspiring to import

methamphetamine into the United States.  Pursuant to

Sections 3B -- 3B1.1(b), (c) -- I'm sorry, 3. --

3B1.1(b), there's a three-level increase for defendant's

role as a manager or supervisor.  I've considered

defendant's objections to probation's conclusion that

the role enhancement applies because he was at least a

manager or a supervisor in the criminal activity.  Under

the circumstances, I agree with Probation's

determination that the record supports a finding that

defendant exercised control over at least codefendant

Sanchez Rocha.

Defendant also objects to certain paragraphs in

the PSR regarding his role in the conspiracy as

factually inaccurate or not supported by the other

statements in the PSR.  The Court will order the

following revisions to the PSR, although these revisions

do not affect the Court's decision to apply the role

enhancement:  Paragraph 36 will be stricken, except for

the statement that, "In the conspiracy Beltran Campos, a

Mexico base source of supply, communicated with both,

1    Mexico base and United States base drug distributors via

2    electronic text communications about importing

3    methamphetamine and other controlled substances into the

4    United States where the drugs would be further

5    distributed," which defendant admitted to when he pled

6    guilty.

7         As for paragraph 37, the Court finds that it is

8    supported by other statements in the PSR and the factual

9    basis for defendant's plea.  Finally, the Court will

10   strike paragraph 47.  The -- the PSR already contains

11   statements of fact regarding defendant's role and money

12   laundering relating to the conspiracy.  And the Court

13   finds that the disputed characterization of those facts

14   in paragraph 47 is unnecessary.

15        Pursuant to sections 3E1.1(a), (b), there's a

16   three-level decrease because defendant timely accepted

17   responsibility for the offense.  The Court agrees with

18   the presentence report's finding of a criminal history

19   score of zero.  This results in a total offense level of

20   38 and a criminal history category of one.  The

21   Guideline range for custody is 235 to 293 months.  There

22   is a statutory minimum in the case of 120 months.  The

23   Guideline term for supervised release is five years.

24   The maximum fine is $10,000,000 and the special

25   assessment for the crime's victim fund is a hundred

1    dollars.

2         Does either counsel know of any reason why

3    sentence should not now be imposed?

4         MR. KENDALL:  No, Your Honor.

5         MR. KALOYANIDES:  No reason, thank you,

6    Your Honor.

7         THE COURT:  In addition to considering the

8    Guideline range, the Court must consider the factors

9    described in 18 U.S.C. Section 3553(a).  The Court

10   cannot presume that the Guideline range is reasonable

11   nor can the Guidelines be given more or less wake than

12   any other factor set forth in Section 3553(a).  In

13   determining this sentence I take very seriously my

14   obligation to act in accordance with the Sentencing

15   Guidelines admonition that the Court impose a sentence

16   sufficient but not greater than necessary to comply with

17   the purposes of sentencing.

18        These purposes include the need for the

19   sentence to reflect the seriousness of the crime, to

20   promote respect for the law, and to provide just

21   punishment for the offense.  The sentence should also

22   deter criminal conduct, protect the public from future

23   crime by the defendant and promote rehabilitation.  In

24   addition to the Guidelines and policy statements, I must

25   consider the nature and circumstances of the offense,

1    including the history and characteristics of the

2    defendant, the need to avoid unwarranted sentence

3    disparities among similarly situated defendants than the

4    kinds of sentences available.  Mr. Campos who is

5    47 years old was born in Mexico.  Growing up, he saw his

6    mother abused by his father and experienced physical

7    abuse himself.  By the time his father passed away ten

8    years ago, Mr. Campos no longer had a relationship with

9    him.

10          According to Mr. Campos, his mother acted as

11    both, the mother and father figure to him.  He remains

12    close to his mother, who's 77 years old, and lives in

13    Mexico; and he speaks with her regularly.

14          Mr. Campos also has two sisters and a brother.

15    His brother -- his brother who ran a used car business

16    and who Mr. Campos had a good relationship, was murdered

17    at age 32.  One of Mr. Campos's sister is a

18    psychologist, and the other one works for a University.

19          Mr. Campos was previously married for 12 years

20    to Mercedes Martell, a codefendant in this case, who's

21    also in custody.  He has two sons and two daughters from

22    his marriage with Ms. Martell.  All of his children live

23    in Mexico.  Julia, his oldest daughter, at 21 years old

24    has undergone rehabilitation after being drugged and

25    raped.  Because both of Julia's parents are

incarcerated, she cares for her younger siblings.
Mr. Campos' youngest son and daughter, who are 15 and
10 years old respectively, are both in therapy as
relating to their parents' incarceration.

Mr. Campos has experienced health problems
while incarcerated.  He needs surgery for persistent
urinary tract infections for which he currently takes
prostate medicine.  He also experiences lower back pain
and needs new glasses.  Although, he was previously
diagnosed and treated for depression, he does not
currently receive treatment.  Mr. Campos also has a
history of alcohol and cocaine addiction.

Mr. Campos has an extensive work history.  And
in 2014, he obtained a bachelors degree in Business
Administration.  At the time of his arrest, he owned and
operated a business buying and selling vehicles for
about 20 years which he plans to resume after he is
released from prison and he returns to Mexico.

While in federal custody, Mr. Campos has worked
in the kitchen and in cleaning, and he currently works
in the yard.  And I'll note that one of the things that
was submitted today were evaluations of his work which
were -- which were evaluations -- evaluated him as very
good or in different performance -- in his performance
at MDC.

1         And there's some evaluations where he is

2    evaluated as outstanding, as well.  I'll note that for

3    the record.

4         In fashioning a sentence, the Court also takes

5    into account defendant's anticipated subsequent

6    deportation and the fact that his immigration status

7    makes him ineligible for most BOP programs, including

8    the ability to finish his sentence in a halfway house.

9         As a result, the sentence he will serve will be

10   significantly longer and thus harsher than the same

11   sentence imposed on a person with legal status.

12        In addition, Mr. Campos reports that he had --

13   that he -- that prior to his extradition, he'd been

14   detained in Mexico.  And as we learned today, that

15   was -- that he has been in custody in Mexico since

16   July 19th of 2018.  And so I just wanted to note that

17   for the record.

18        The Court also takes in consideration the fact

19   that Mr. Campos has been in custody for the entirety of

20   the pandemic.  To control the spread of the COVID-19

21   virus, the BOP and its contracting facilities

22   implemented a number of restrictions, including 24-hour

23   lockdowns, elimination of in-person visits from families

24   and friends and reduced access to things, like

25   recreation, telephones, and social interaction.

 1     Needless to say, inmates have no autonomy over

 2     decisions, such as what personal protective equipment to

 3     use or how to safely social distance.

 4             In short, there's no doubt that Mr. Campos'

 5     incarceration thus far has been much more harsh and

 6     punitive than it would have been under ordinary

 7     circumstances.

 8             Finally, the Court notes that defendant's

 9     Guideline range is driven to a large extent by the

10     quantity and purity of methamphetamine involved in this

11     case.  As noted by the Supreme Court in

12     *Kimbrough v. United States*, the base offense levels for

13     drug trafficking cases under Section 2D1.1 are based on

14     a weight-driven scheme and are not the product of the

15     same empirical approach used in formulating offense

16     levels under other sections of the Guidelines.  Courts

17     have recognized that when a Guideline is not based on

18     empirical data and national experience, the Guideline

19     sentence may not achieve the sentencing purposes set

20     forth in section 3553(a).  As the courts explained in

21     *United States v. Hayes* and *United States v. Hubbell*,

22     this approach follows congressional directives rather

23     than applying the Commission's unique area of expertise

24     to assess the various factors contributing to a

25     defendant's culpability.  In other words, sentences

1    under Section 2D1.1 create an increased possibility that

2    a particular defendant's culpability may not match the

3    severity of the punishment that results from the

4    quantity of controlled substances the defendant is found

5    to have at the sentencing phase.

6         Further, the Guidelines emphasis on drug purity

7    leads to arbitrary sentencing distinctions not related

8    to a defendant's culpability.  This -- the distinction

9    in Guidelines sentences over pure methamphetamine has as

10   the Court explained in *United States v. Hendricks* led to

11   substantial and unwarranted disparities in sentencing

12   based solely on whether methamphetamine is lab-tested.

13   In other words, sentences based on methamphetamine

14   quantity and purity may be substantially increased, but

15   not for reasons that relate to the defendant's

16   culpability or the danger which he or she poses society.

17   Because today most methamphetamine seized at all

18   distributions is remarkably pure, which means that

19   higher purity is not a good indicator of a defendant's

20   place in the chain of distribution.

21        The Government contends that even if defendant

22   were only held accountable for 15 kilograms of a mixture

23   or substance containing a detectible amount of

24   methamphetamine, as discussed during his April 2013

25   communications with Carliyos, he would still have a base

1    offense level of 13; therefore, according to the

2    Government, even if the Court believes that the purity

3    of the methamphetamine should not be considered during

4    sentencing, the base offense level would remain the same

5    under Guidelines Section 2D1.1(c)(2); however, the

6    Government does not provide any record citations to

7    support its assertion regarding defendant's

8    communications with Carliyos involving 15 kilograms of

9    methamphetamine.  And based on the Court's review of the

10   PSR, it appears that the Government is referring to

11   paragraph 40, which states that Campos inquired about

12   approximately 15 pounds of methamphetamine, which of

13   course, is less than the 15 kilogram cutoff that the

14   Government cites for the 36-point base offense level,

15   nor does adding the amount that defendant discussed with

16   Carliyos through the 35 -- through the 3,567 grams

17   described in the factual basis for defendant's plea,

18   reach the 15-kilogram cutoff.

19          Thus, the Government's contention that the

20   Court's policy disagreement with the methamphetamine

21   Guidelines makes no difference here, is unpersuasive.

22   In short, the Court believes that a variance is

23   warranted in this case.  Although, the Court is still

24   constrained by the 120-month mandatory minimum custodial

25   sentence, here, Mr. Campos' abusive childhood, his

1    substance abuse issues, his stable employment history,

2    and the Court's policy disagreement with the Guidelines,

3    and the other Section 3553(a) factors discussed today,

4    justify a sentence below the Guideline range.

5         Under the circumstances, the Court is persuaded

6    that the following sentence is sufficient but not

7    greater than necessary to comply with the purposes of

8    sentencing set forth in 18 U.S.C. Section 3553(a).

9    First, it is the judgment of the Court that defendant

10   Nayar Josue Beltran Campos is committed on Count 1 of

11   the indictment to the custody of the Bureau of Prisons

12   for a term of 127 months.  This sentence is reasonable

13   and proper in that it reflects the factors set forth in

14   Section 3553(a) and other congressional mandates.

15        Second, the Court finds that five years of

16   supervised release is appropriate.  And the terms and

17   conditions of Mr. Campos' supervised release shall be

18   condition numbers 1 through 10 set forth on pages 2 and

19   3 of the probation officer's letter filed on

20   July 14th, 2022, which are hereby incorporated by

21   reference.  The Court finds the duration, terms, and

22   conditions of supervised release ordered are reasonably

23   related to the history and characteristics of the

24   defendant.  The need for the sentence imposed to afford

25   adequate deterrence to criminal conduct and the need to

```
 1    protect the public from further crimes of the defendant.

 2          The Court also finds the duration, terms, and

 3    conditions of supervised release ordered herein involve

 4    no greater deprivation of liberty that is necessary for

 5    the purposes described earlier.

 6          Condition numbers 1, 2, 7, and 8 are standard

 7    conditions of supervision and are statutorily mandated.

 8    Condition numbers 3 through 6 are imposed due to

 9    defendant's history and characteristics.  Condition

10    number 9 is imposed due to the nature and circumstances

11    of the offense.  Condition number 10 is imposed based on

12    defendant's immigration status.  The -- was there an

13    order of forfeiture in this case, Mr. Kendall?

14          MR. KENDALL:  No, Your Honor.

15          THE COURT:  No?  Okay.

16          All fines are waived as the Court finds the

17    defendant does not have the ability to pay a fine.

18    Finally, the defendant shall pay to the United States a

19    special assessment of a hundred dollars which is due

20    immediately.  Any unpaid balance shall be due during the

21    period of imprisonment at the rate of not less than $25

22    per quarter and pursuant to the Bureau of Prisons Inmate

23    Financial Responsibility Program.

24          Mr. Kaloyanides, would your client like to

25    request that he be designated to a specific BOP
```

```
 1    institution or a specific area within the United States?

 2              MR. KALOYANIDES:  Designation somewhere close

 3    to the border just in case his family can come up and

 4    visit.

 5              THE COURT:  Okay.

 6              MR. KALOYANIDES:  Whether that's California or

 7    Arizona, whatever is appropriate.

 8              I would though ask the Court to recommend that

 9    the BOP consider and evaluate him for the RDAP program.

10              THE COURT:  I was going to do that.  I know

11    that they might -- I don't know why they don't but --

12    okay.

13              MR. KALOYANIDES:  Well, and primarily because I

14    just want to emphasize for the record for the BOP's

15    edification, he's technically here legally, because he

16    was extradited.

17              THE COURT:  I see.

18              MR. KALOYANIDES:  So his status is technically

19    legal, even though he doesn't have a green card; he

20    doesn't have a visa.  And I don't know, but I would hope

21    that that makes a difference in their determination of

22    the programs that he would be eligible for.

23              THE COURT:  Then the Court recommends that the

24    defendant be assigned to a federal correctional facility

25    near the border -- near the California/Arizona border.
```

 1    The Court also recommends that defendant be permitted to

 2    participate in the BOP's RDAP program.

 3         Mr. Campos, you may have a right to appeal the

 4    sentence which the Court has imposed upon you.  If you

 5    wish to do so, you should discuss this matter with your

 6    lawyer, who will assist you in the filing of a timely

 7    notice of appeal.  If you do not have the money to pay

 8    the cost of that appeal, you can ask the Court upon

 9    proper application to waive those costs.  Do you

10    understand all of that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  The statement of reasons shall be

13    included in the commitment order and judgment and shall

14    be provided to the Probation Office and Sentencing

15    Commission and the Bureau of Prisons.  A complete copy

16    of the presentence report shall be provided to the

17    Bureau of Prisons and the Sentencing Commission.  Any

18    other copies of the report and related materials shall

19    remain confidential.

20         If an appeal is taken, counsel on appeal shall

21    have further access to the report.

22         Do either counsel have anything further at this

23    time?  Is there any charges to dismiss, Mr. Kendall?

24         MR. KENDALL:  Yes, Your Honor; although, it's a

25    little bit of a strange situation, because it was an

1    open plea to only one count.

2              THE COURT:  Oh, I see.

3              MR. KENDALL:  It is actually somewhat rare.  So

4    I think what I would ask here is perhaps that we move to

5    dismiss without prejudice --

6              THE COURT:  Okay.

7              MR. KENDALL:  -- those additional counts --

8              THE COURT:  Okay.

9              MR. KENDALL:  -- which is a strange ask, but it

10   is probably the right thing to do in this situation.

11             THE COURT:  I'll order your motion granted.

12   And the charges -- the remaining charges are dismissed

13   without prejudice then.

14             MR. KENDALL:  As to this defendant.

15             THE COURT:  As to this defendant.

16             MR. KENDALL:  Anything else, Mr. Kaloyanides?

17             MR. KALOYANIDES:  No, thank you, Your Honor.

18             THE COURT:  Okay.  Thank you.  We're in recess.

19                  (Whereupon, proceeding adjourned.)

20                       -  -  -

21

22

23

24

25

1              **C E R T I F I C A T E**

2

3

4

5      UNITED STATES OF AMERICA          :

6                  vs.                    :   No. CR 15-00206-FMO

7      NAYAR JOSUE BELTRAN CAMPOS         :

8

9

10   I, MARIA BUSTILLOS, OFFICIAL COURT REPORTER, IN AND FOR THE

11   UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

12   CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

13   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

14   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

15   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

16   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

17   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

18   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

19   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

20   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

21

22   /S/_____        09/04/2023_

23   MARIA R. BUSTILLOS                 DATE
     OFFICIAL REPORTER
24

25

## $

**$10,000,000** [1] - 25:24
**$25** [1] - 34:21

## /

**/S** [1] - 38:22

## 0

**09/03/2023** [1] - 38:22

## 1

**1** [7] - 13:2, 13:3, 13:16, 23:11, 33:10, 33:18, 34:6
**10** [3] - 28:3, 33:18, 34:11
**111** [1] - 2:12
**12** [1] - 27:19
**120** [3] - 15:25, 16:11, 25:22
**120-month** [1] - 32:24
**12254** [1] - 1:22
**127** [1] - 33:12
**13** [1] - 32:1
**1400** [1] - 2:7
**14th** [3] - 4:23, 5:1, 33:20
**15** [7] - 10:25, 11:6, 28:2, 31:22, 32:8, 32:12, 32:13
**15-00206-FMO** [3] - 1:10, 4:5, 38:6
**15-kilogram** [1] - 32:18
**18** [3] - 23:10, 26:9, 33:8
**18th** [1] - 4:25
**19th** [3] - 17:14, 17:22, 29:16
**1ST** [1] - 1:23

## 2

**2** [4] - 13:2, 13:16, 33:18, 34:6
**2(d)1.1(a)(5** [1] - 23:21
**20** [1] - 28:17
**2013** [1] - 31:24
**2014** [1] - 28:14
**2018** [3] - 17:14, 17:22, 29:16
**2021** [1] - 23:17
**2022** [7] - 1:18, 4:1, 4:21, 4:23, 4:25, 5:1, 33:20
**21** [2] - 23:14, 27:23
**213** [1] - 1:24

**213)623-8120** [1] - 2:14
**213)894-2576** [1] - 2:8
**235** [1] - 25:21
**235-month** [1] - 16:2
**24-hour** [1] - 29:22
**27** [2] - 1:18, 4:1
**28** [1] - 38:13
**293** [1] - 25:21
**2:16** [1] - 4:3
**2D1.1** [2] - 30:13, 31:1
**2D1.1(b)(5** [1] - 24:4
**2D1.1(c)(2** [1] - 32:5
**2nd** [1] - 4:21

## 3

**3** [4] - 13:16, 24:7, 33:19, 34:8
**3,567** [2] - 10:22, 32:16
**312** [1] - 2:6
**32** [2] - 23:23, 27:17
**35** [1] - 32:16
**350** [1] - 1:23
**3553(a** [5] - 8:17, 9:5, 15:23, 33:3, 33:14
**3553(a)** [5] - 23:11, 26:9, 26:12, 30:20, 33:8
**36** [5] - 10:22, 11:6, 11:12, 23:20, 24:23
**36-point** [1] - 32:14
**37** [1] - 25:7
**38** [2] - 11:8, 25:20
**3B** [1] - 24:7
**3B1.1(b** [2] - 24:7, 24:8
**3E1.1(a** [1] - 25:15

## 4

**4** [1] - 3:2
**40** [1] - 32:11
**400** [1] - 2:13
**4455** [1] - 1:23
**47** [3] - 25:10, 25:14, 27:5

## 5

**50** [1] - 11:15

## 6

**6** [1] - 34:8

## 7

**7** [1] - 34:6
**753** [1] - 38:12
**77** [1] - 27:12

## 8

**8** [3] - 12:22, 16:23, 34:6
**894-2739** [1] - 1:24

## 9

**9** [1] - 34:10
**90012** [2] - 1:24, 2:7
**90802** [1] - 2:13
**963** [1] - 23:14

## A

**abdication** [1] - 9:6
**ability** [4] - 6:8, 8:14, 29:8, 34:17
**ABOVE** [1] - 38:15
**ABOVE-ENTITLED** [1] - 38:15
**absent** [1] - 15:14
**abuse** [2] - 27:7, 33:1
**abused** [1] - 27:6
**abusive** [1] - 32:25
**accepted** [2] - 12:8, 25:16
**access** [2] - 29:24, 36:21
**accordance** [2] - 23:10, 26:14
**according** [4] - 11:3, 17:15, 27:10, 32:1
**account** [2] - 16:8, 23:17, 29:5
**accountable** [1] - 31:22
**accurate** [1] - 23:5
**achieve** [1] - 30:19
**acknowledges** [1] - 16:5
**act** [1] - 26:14
**acted** [1] - 27:10
**actions** [1] - 22:14
**active** [1] - 12:23
**activities** [1] - 13:19
**activity** [1] - 24:12
**actual** [1] - 10:23
**add** [3] - 5:13, 11:7, 17:4
**addendums** [1] - 4:23
**addiction** [1] - 28:12
**adding** [1] - 32:15
**addition** [6] - 6:13, 6:16, 10:24, 26:7, 26:24, 29:12
**additional** [2] - 15:19, 37:7
**address** [2] - 10:18, 24:2
**adequate** [1] - 33:25
**adjourned** [1] - 37:19
**Administration** [1] -

28:15
**admitted** [1] - 25:5
**admonition** [1] - 26:15
**adopt** [2] - 20:9, 23:5
**adopting** [1] - 20:10
**adults** [1] - 10:8
**advisory** [1] - 23:19
**advocating** [1] - 13:22
**affect** [3] - 8:2, 8:15, 24:22
**affected** [1] - 16:7
**affecting** [1] - 22:23
**affects** [3] - 7:23, 10:6, 10:7
**afford** [1] - 33:24
**afternoon** [5] - 4:8, 4:10, 4:11, 4:16, 14:2
**age** [1] - 27:17
**aggravated** [1] - 13:21
**aggravating** [1] - 12:16
**ago** [2] - 11:18, 27:8
**agree** [2] - 12:12, 24:13
**agreed** [1] - 13:13
**agreement** [3] - 13:1, 13:3, 23:18
**agrees** [1] - 25:17
**ahead** [2] - 6:19, 22:10
**alcohol** [1] - 28:12
**alert** [2] - 8:5, 9:1
**allow** [6] - 6:17, 21:18, 22:9
**allowing** [2] - 11:25, 21:22
**ALSO** [1] - 2:15
**AMERICA** [3] - 1:7, 2:4, 38:5
**America** [1] - 4:5
**amount** [4] - 10:23, 11:5, 31:23, 32:15
**amounts** [1] - 11:7
**analysis** [5] - 8:17, 9:5, 9:6, 9:22, 23:16
**AND** [3] - 38:10, 38:13, 38:15
**AND/OR** [1] - 38:19
**ANGELES** [4] - 1:17, 1:24, 2:7, 4:1
**anticipated** [1] - 29:5
**ANY** [1] - 38:18
**apart** [1] - 15:15
**apologize** [2] - 5:8, 13:25
**apology** [1] - 22:14
**appeal** [5] - 36:3, 36:7, 36:8, 36:20
**appearance** [2] - 12:5, 12:7
**appearances** [1] - 4:7
**APPEARING** [1] - 2:15
**application** [1] - 36:9
**applied** [1] - 15:6
**applies** [2] - 9:15,

24:11
**apply** [3] - 8:12, 9:8, 24:22
**applying** [1] - 30:23
**appreciate** [2] - 17:24, 18:5
**approach** [2] - 30:15, 30:22
**appropriate** [3] - 16:9, 33:16, 35:7
**April** [1] - 31:24
**arbitrary** [1] - 31:7
**ARE** [1] - 38:19
**area** [2] - 30:23, 35:1
**argument** [6] - 7:21, 7:22, 7:24, 8:3, 19:25, 20:1
**arguments** [3] - 19:15, 19:21, 20:8
**Arizona** [1] - 35:7
**arrange** [1] - 20:17
**arrangements** [1] - 15:10
**arranging** [2] - 7:11, 12:19
**arrest** [1] - 28:15
**arrested** [2] - 17:7, 17:9
**aspects** [1] - 6:20
**assertion** [1] - 32:7
**assess** [1] - 30:24
**assessing** [1] - 24:2
**assessment** [2] - 25:25, 34:19
**assigned** [1] - 35:24
**assist** [1] - 36:6
**AT** [1] - 4:3
**attempted** [2] - 5:9, 14:6
**ATTORNEY** [1] - 2:5
**attorney** [5] - 18:22, 20:16, 21:23, 22:2, 22:6
**August** [2] - 20:24, 20:25
**authority** [1] - 23:10
**autonomy** [1] - 30:1
**available** [1] - 27:4
**avoid** [1] - 27:2
**aware** [2] - 10:2, 20:24

## B

**bachelors** [1] - 28:14
**backed** [1] - 20:13
**background** [1] - 10:1
**bad** [2] - 22:14, 22:18
**balance** [1] - 34:20
**bank** [1] - 13:7
**base** [10] - 11:11, 23:20, 23:22, 24:25, 25:1, 30:12, 31:25, 32:4, 32:14
**based** [13] - 7:9, 9:22, 10:22, 17:9, 23:6,

*39*

23:18, 23:24, 30:13, 30:17, 31:12, 31:13, 32:9, 34:11
**bases** [1] - 13:4
**basis** [2] - 25:9, 32:17
**BEACH** [1] - 2:13
**bear** [1] - 10:8
**become** [1] - 23:1
**behalf** [8] - 4:9, 5:4, 5:21, 6:15, 19:22, 20:7, 21:25, 22:7
**BEHALF** [2] - 2:4, 2:10
**belabor** [1] - 15:2
**believes** [2] - 32:2, 32:22
**below** [1] - 33:4
**BELTRAN** [3] - 1:12, 2:10, 38:7
**Beltran** [11] - 4:6, 4:12, 5:9, 6:23, 8:11, 9:25, 16:4, 17:6, 19:10, 24:24, 33:10
**benchmark** [1] - 23:15
**better** [2] - 14:1, 23:2
**between** [2] - 9:21, 23:25
**beyond** [1] - 9:4
**big** [2] - 22:13, 22:14
**bit** [2] - 22:24, 36:25
**block** [1] - 8:21
**BOP** [7] - 18:2, 18:4, 18:6, 29:7, 29:21, 34:25, 35:9
**BOP's** [3] - 17:11, 35:14, 36:2
**border** [2] - 35:3, 35:25
**born** [1] - 27:5
**BOULEVARD** [1] - 2:12
**brief** [3] - 9:25, 10:13, 20:7
**briefing** [1] - 9:12
**briefly** [3] - 5:4, 14:25, 16:17
**broker** [1] - 7:11
**brother** [2] - 27:14, 27:15
**brunt** [1] - 10:9
**Bureau** [6] - 17:16, 18:13, 33:11, 34:22, 36:15, 36:17
**business** [2] - 27:15, 28:16
**Business** [1] - 28:14
**BUSTILLOS** [3] - 1:21, 38:10, 38:23
**buying** [1] - 28:16
**BY** [2] - 2:5, 2:11

**C**

**c)(2** [1] - 23:21
**C.S.R** [1] - 1:22
**CA** [2] - 2:7, 2:13

**calculates** [1] - 23:19
**calculation** [5] - 8:13, 15:21, 17:11, 18:8, 23:24
**calculations** [1] - 18:15
**CALIFORNIA** [5] - 1:2, 1:17, 1:24, 4:1, 38:12
**California** [1] - 35:6
**California/Arizona** [1] - 35:25
**CAMPOS** [3] - 1:12, 2:10, 38:7
**Campos** [24] - 4:6, 4:12, 5:9, 6:23, 8:11, 17:6, 18:21, 19:10, 24:24, 27:4, 27:8, 27:10, 27:14, 27:16, 27:19, 28:5, 28:11, 28:13, 28:19, 29:12, 29:19, 32:11, 33:10, 36:3
**Campos'** [7] - 9:25, 10:3, 16:4, 28:2, 30:4, 32:25, 33:17
**Campos's** [1] - 27:17
**cannot** [1] - 26:10
**car** [1] - 27:15
**card** [1] - 35:19
**care** [1] - 15:11
**cares** [1] - 28:1
**Carliyos** [4] - 12:20, 31:25, 32:8, 32:16
**case** [19] - 4:4, 7:15, 10:1, 10:3, 10:4, 10:5, 12:13, 13:13, 13:16, 14:7, 14:20, 15:12, 24:3, 25:22, 27:20, 30:11, 32:23, 34:13, 35:3
**cases** [4] - 15:4, 15:18, 18:11, 30:13
**categorical** [1] - 9:14
**category** [1] - 25:20
**caused** [1] - 16:4
**CENTRAL** [2] - 1:2, 38:11
**certain** [1] - 24:17
**certainly** [2] - 12:16, 13:4
**certified** [1] - 4:17
**CERTIFY** [1] - 38:12
**chain** [1] - 31:20
**change** [4] - 5:18, 6:11, 9:19, 12:25
**chaos** [1] - 17:3
**characteristics** [3] - 27:1, 33:23, 34:9
**characterization** [1] - 25:13
**charge** [1] - 17:9
**charged** [1] - 23:12
**CHARGED** [1] - 38:18
**charges** [3] - 36:23, 37:12

**childhood** [1] - 32:25
**children** [7] - 10:2, 10:8, 11:18, 12:10, 16:7, 22:1, 27:22
**choices** [1] - 11:20
**Chris** [1] - 4:9
**CHRISTOPHER** [1] - 2:5
**CIRCUIT** [1] - 38:18
**circumstances** [5] - 24:13, 26:25, 30:7, 33:5, 34:10
**citations** [1] - 32:6
**cites** [1] - 32:14
**cleaning** [1] - 28:20
**clear** [1] - 9:6
**clearly** [1] - 8:18
**client** [4] - 6:1, 6:5, 6:15, 34:24
**close** [4] - 11:1, 22:20, 27:12, 35:2
**co** [3] - 13:2, 13:3
**co-conspirator** [3] - 13:2, 13:3
**cocaine** [1] - 28:12
**CODE** [1] - 38:13
**codefendant** [2] - 24:15, 27:20
**coming** [1] - 9:17
**Commission** [4] - 9:7, 9:20, 36:15, 36:17
**Commission's** [2] - 9:19, 30:23
**commitment** [1] - 36:13
**commits** [1] - 10:6
**committed** [3] - 9:7, 22:15, 33:10
**communicated** [1] - 24:25
**communications** [4] - 10:24, 25:2, 31:25, 32:8
**complete** [2] - 14:9, 36:15
**comply** [2] - 26:16, 33:7
**comprehended** [1] - 22:17
**comprehensive** [1] - 20:7
**concern** [1] - 17:25
**concerns** [1] - 6:7
**conclusion** [1] - 24:10
**condition** [5] - 33:18, 34:6, 34:8, 34:9, 34:11
**conditions** [4] - 33:17, 33:22, 34:3, 34:7
**conduct** [5] - 7:8, 7:10, 16:4, 26:22, 33:25
**CONFERENCE** [2] - 38:17, 38:20
**confidential** [1] -

36:19
**CONFORMANCE** [2] - 38:16, 38:19
**Congress** [2] - 9:13, 9:20
**congressional** [2] - 30:22, 33:14
**connection** [1] - 23:25
**consider** [9] - 6:25, 10:10, 11:3, 17:12, 21:17, 24:2, 26:8, 26:25, 35:9
**consideration** [3] - 11:9, 22:24, 29:18
**considered** [4] - 4:21, 12:10, 24:9, 32:3
**considering** [2] - 9:25, 26:7
**considers** [1] - 11:12
**conspiracies** [1] - 17:2
**conspiracy** [6] - 13:23, 15:15, 23:12, 24:18, 24:24, 25:12
**conspirator** [3] - 13:2, 13:3
**conspiring** [1] - 24:5
**constrained** [1] - 32:24
**consultations** [1] - 19:9
**consulted** [1] - 23:16
**containing** [1] - 31:23
**contains** [1] - 25:10
**contends** [2] - 23:22, 31:21
**contention** [1] - 32:19
**contents** [1] - 6:4
**contest** [2] - 5:17, 6:11
**contracting** [1] - 29:21
**contributing** [1] - 30:24
**control** [7] - 7:14, 15:4, 15:6, 15:11, 16:18, 24:15, 29:20
**controlled** [3] - 23:13, 25:3, 31:4
**controlling** [1] - 15:17
**conversations** [1] - 11:13
**cooperate** [1] - 11:19
**copies** [1] - 36:18
**copy** [2] - 19:11, 36:15
**CORPORATION** [1] - 2:11
**correct** [2] - 15:22, 23:5
**CORRECT** [1] - 38:14
**correction** [1] - 20:2
**correctional** [1] - 35:24
**cost** [1] - 36:8
**costs** [1] - 36:9

**couched** [1] - 8:5
**counsel** [10] - 4:7, 5:22, 14:4, 16:18, 17:17, 18:5, 18:12, 26:2, 36:20, 36:22
**count** [1] - 37:1
**Count** [2] - 23:11, 33:10
**counts** [1] - 37:7
**couriers** [1] - 13:11
**course** [2] - 12:24, 32:13
**court** [3] - 9:12, 14:1, 22:13
**Court** [57] - 4:13, 6:17, 6:22, 8:5, 8:6, 8:7, 8:9, 8:13, 8:18, 9:1, 9:2, 10:2, 10:9, 10:12, 10:20, 11:12, 12:25, 13:14, 14:21, 14:22, 15:18, 15:20, 16:8, 16:15, 17:11, 18:9, 23:9, 23:19, 24:1, 24:20, 25:7, 25:9, 25:12, 25:17, 26:8, 26:9, 26:15, 29:4, 29:18, 30:8, 30:11, 31:10, 32:2, 32:22, 32:23, 33:5, 33:9, 33:15, 33:21, 34:2, 34:16, 35:8, 35:23, 36:1, 36:4, 36:8
**COURT** [50] - 1:1, 1:21, 4:3, 4:10, 4:14, 4:19, 5:13, 5:16, 5:20, 5:25, 6:4, 6:7, 6:10, 6:14, 6:19, 7:19, 8:8, 10:14, 14:23, 15:1, 17:13, 17:20, 17:23, 18:21, 18:25, 19:4, 19:17, 19:23, 20:6, 21:2, 21:11, 21:13, 21:20, 22:10, 23:3, 26:7, 34:15, 35:5, 35:10, 35:17, 35:23, 36:12, 37:2, 37:6, 37:8, 37:11, 37:15, 37:18, 38:10, 38:11
**Court's** [7] - 8:12, 21:3, 23:16, 24:22, 32:9, 32:20, 33:2
**COURTHOUSE** [1] - 1:22
**courtroom** [1] - 10:17
**COURTROOM** [1] - 4:4
**courts** [4] - 9:13, 9:16, 9:17, 30:20
**Courts** [1] - 30:16
**COVID-19** [1] - 29:20
**CR** [3] - 1:10, 4:5, 38:6
**create** [1] - 31:1
**created** [1] - 9:7
**credit** [4] - 17:7, 17:8,

41

18:3, 18:18
**crime** [2] - 26:19, 26:23
**crime's** [1] - 25:25
**crimes** [1] - 34:1
**criminal** [8] - 12:1, 13:12, 16:10, 24:12, 25:18, 25:20, 26:22, 33:25
**culpability** [7] - 9:11, 9:22, 24:1, 30:25, 31:2, 31:8, 31:16
**custodial** [1] - 32:24
**custody** [8] - 4:13, 22:17, 25:21, 27:21, 28:19, 29:15, 29:19, 33:11
**cutoff** [2] - 32:13, 32:18

**D**

**danger** [1] - 31:16
**data** [2] - 23:25, 30:18
**DATE** [1] - 38:23
**date** [1] - 17:20
**daughter** [2] - 27:23, 28:2
**daughters** [1] - 27:21
**DAVID** [2] - 2:10, 2:11
**David** [1] - 4:12
**dealt** [1] - 18:10
**death** [1] - 22:19
**decide** [2] - 21:25
**decided** [1] - 11:24
**decision** [1] - 24:22
**decisions** [3] - 22:7, 22:18, 30:2
**declaring** [1] - 9:17
**decrease** [1] - 25:16
**defendant** [37] - 4:20, 5:4, 10:5, 10:7, 11:19, 12:8, 12:11, 13:4, 13:9, 13:10, 13:15, 13:16, 14:6, 14:21, 15:24, 16:19, 23:11, 23:22, 24:15, 24:17, 25:5, 25:16, 26:23, 27:2, 31:4, 31:21, 32:15, 33:9, 33:24, 34:1, 34:17, 34:18, 35:24, 36:1, 37:14, 37:15
**Defendant** [1] - 1:13
**DEFENDANT** [12] - 18:23, 19:2, 19:20, 19:24, 20:4, 20:22, 21:8, 21:12, 21:18, 21:21, 22:11, 36:11
**defendant's** [18] - 4:25, 13:5, 23:20, 24:8, 24:10, 25:9, 25:11, 29:5, 30:8, 30:25, 31:2, 31:8, 31:15, 31:19, 32:7,

32:17, 34:9, 34:12
**DEFENDANTS** [1] - 2:10
**defendants** [1] - 27:3
**Defense** [7] - 5:22, 11:3, 14:3, 16:18, 17:6, 17:17, 18:12
**define** [1] - 12:23
**definitely** [1] - 12:11
**degree** [1] - 28:14
**delay** [1] - 5:8
**deliver** [5] - 7:14, 12:20, 12:21, 15:9, 16:23
**deportation** [1] - 29:6
**DEPOSIT** [1] - 38:19
**depression** [1] - 28:10
**deprivation** [1] - 34:4
**DEPUTY** [1] - 4:4
**described** [3] - 26:9, 32:17, 34:5
**describes** [1] - 14:18
**descriptions** [1] - 12:19
**designated** [1] - 34:25
**designation** [1] - 35:2
**detained** [1] - 29:14
**detectible** [1] - 31:23
**deter** [1] - 26:22
**determination** [3] - 16:15, 24:14, 35:21
**determine** [1] - 16:11
**determined** [2] - 6:22, 15:21
**determining** [3] - 15:5, 16:9, 26:13
**deterrence** [1] - 33:25
**diagnosed** [1] - 28:10
**difference** [2] - 32:21, 35:21
**different** [4] - 7:10, 8:14, 8:17, 28:24
**difficult** [1] - 22:21
**directing** [1] - 13:18
**direction** [5] - 12:23, 13:6, 15:4, 17:1, 17:2
**directives** [1] - 30:22
**disagree** [4] - 7:2, 7:7, 8:23, 12:13
**disagreed** [1] - 13:14
**disagreement** [5] - 9:14, 9:18, 14:4, 32:20, 33:2
**discretion** [2] - 8:12, 15:8
**discuss** [4] - 19:1, 20:15, 20:18, 36:5
**discussed** [4] - 6:1, 31:24, 32:15, 33:3
**dismiss** [1] - 36:23, 37:5
**dismissed** [1] - 37:12
**disparities** [2] - 27:3, 31:11

**disparity** [1] - 16:2
**disputed** [1] - 25:13
**distance** [1] - 30:3
**distinction** [2] - 9:21, 31:8
**distinctions** [1] - 31:7
**distributed** [1] - 25:5
**distribution** [2] - 14:11, 31:20
**distributions** [1] - 31:18
**distributors** [1] - 25:1
**DISTRICT** [5] - 1:1, 1:2, 1:5, 38:11
**DIVISION** [1] - 1:3
**DO** [1] - 38:12
**docket** [2] - 5:2, 5:14
**documents** [1] - 4:22
**dollars** [2] - 26:1, 34:19
**doubt** [1] - 30:4
**down** [1] - 22:9
**drive** [1] - 22:18
**driven** [2] - 30:9, 30:14
**dropping** [1] - 13:6
**drug** [8] - 7:12, 13:7, 14:11, 14:19, 17:1, 25:1, 30:13, 31:6
**drugged** [1] - 27:24
**drugs** [3] - 11:14, 16:25, 25:4
**due** [4] - 34:8, 34:10, 34:19, 34:20
**duration** [2] - 33:21, 34:2
**during** [7] - 14:7, 22:16, 22:22, 23:4, 31:24, 32:3, 34:20

**E**

**e-mail** [1] - 17:15
**edification** [1] - 35:15
**edition** [1] - 23:17
**either** [4] - 9:19, 21:25, 26:2, 36:22
**electronic** [1] - 25:2
**eligibility** [1] - 7:24
**eligible** [3] - 7:1, 15:16, 35:22
**elimination** [1] - 29:23
**emotionally** [1] - 22:21
**emphasis** [1] - 31:6
**emphasize** [2] - 15:3, 35:14
**empirical** [3] - 23:25, 30:15, 30:18
**employment** [1] - 33:1
**ending** [1] - 21:10
**engage** [1] - 7:12
**enhancement** [9] - 6:24, 7:5, 7:6, 9:3, 14:16, 15:6, 15:16,

24:11, 24:23
**enormous** [1] - 10:1
**enterprise** [2] - 12:1, 13:12
**entirety** [1] - 29:19
**ENTITLED** [1] - 38:15
**equipment** [1] - 30:2
**especially** [2] - 11:4, 22:22
**ESQ** [2] - 2:6, 2:12
**essential** [1] - 17:3
**evaluate** [1] - 35:9
**evaluated** [2] - 28:23, 29:2
**evaluations** [3] - 28:22, 28:23, 29:1
**evidence** [2] - 8:10, 8:18
**ex** [1] - 11:21
**ex-wife** [1] - 11:21
**exact** [1] - 12:8
**exactly** [2] - 12:22, 13:9
**except** [2] - 23:3, 24:23
**exercise** [1] - 23:9
**exercised** [1] - 24:15
**experience** [1] - 30:18
**experienced** [2] - 27:6, 28:5
**experiences** [1] - 28:8
**expertise** [1] - 30:23
**explain** [2] - 6:4, 21:15
**explained** [2] - 30:20, 31:10
**extensive** [2] - 9:11, 28:13
**extent** [2] - 17:16, 30:9
**extra** [1] - 18:18
**extradite** [1] - 11:23
**extradited** [1] - 35:16
**extradition** [2] - 18:11, 29:13
**extraordinarily** [1] - 12:14

**F**

**facilitate** [1] - 18:13
**facilities** [1] - 29:21
**facility** [2] - 19:9, 35:24
**fact** [9] - 6:23, 7:13, 11:7, 13:18, 16:7, 19:21, 25:11, 29:6, 29:18
**factor** [3] - 7:4, 10:9, 26:12
**factors** [7] - 7:2, 9:24, 15:23, 26:8, 30:24, 33:3, 33:13
**facts** [5] - 7:5, 7:7, 15:8, 25:13
**factual** [3] - 13:4,

25:8, 32:17
**factually** [1] - 24:19
**fair** [2] - 18:19, 22:3
**fall** [1] - 15:15
**families** [1] - 29:23
**family** [3] - 10:7, 16:5, 35:3
**far** [3] - 8:2, 16:1, 30:5
**fashioning** [1] - 29:4
**fast** [1] - 13:25
**father** [4] - 16:14, 27:6, 27:7, 27:11
**FAYOS** [1] - 2:15
**Fayos** [1] - 4:17
**federal** [2] - 28:19, 35:24
**FEE** [1] - 38:18
**FEES** [1] - 38:18
**FERNANDO** [1] - 1:5
**Fernando** [1] - 22:11
**few** [3] - 20:13, 22:8, 22:13
**figure** [1] - 27:11
**file** [3] - 4:18, 5:2, 20:5
**filed** [6] - 4:22, 4:24, 4:25, 20:6, 23:7, 33:19
**filing** [1] - 36:6
**finally** [3] - 25:9, 30:8, 34:18
**Financial** [1] - 34:23
**findings** [1] - 19:15
**fine** [3] - 5:13, 25:24, 34:17
**fines** [1] - 34:16
**finish** [1] - 29:8
**firmly** [1] - 13:20
**first** [4] - 7:3, 21:5, 21:21, 33:9
**fit** [3] - 20:20, 21:5, 21:6
**five** [3] - 13:23, 25:23, 33:15
**focus** [2] - 15:5, 15:18
**following** [3] - 4:21, 24:21, 33:6
**follows** [2] - 23:20, 30:22
**footnote** [2] - 10:19, 12:17
**FOR** [3] - 38:10, 38:11, 38:18
**FOREGOING** [1] - 38:13
**forfeiture** [1] - 34:13
**FORMAT** [1] - 38:16
**formulating** [1] - 30:15
**forth** [5] - 26:12, 30:20, 33:8, 33:13, 33:18
**four** [1] - 13:22
**frame** [1] - 7:21
**friends** [1] - 29:24
**full** [2] - 8:23, 14:4

42

fully [3] - 7:2, 12:4, 14:14
fun [1] - 13:7
fund [1] - 25:25
future [1] - 26:22

**G**

generous [1] - 11:8
gist [1] - 19:19
given [3] - 12:14, 15:8, 26:11
glasses [1] - 28:9
Government [12] - 5:21, 7:1, 7:9, 8:23, 13:13, 15:19, 18:5, 31:21, 32:2, 32:6, 32:10, 32:14
Government's [3] - 4:24, 10:19, 32:19
grams [3] - 10:22, 11:15, 32:16
granted [1] - 37:11
greater [3] - 26:16, 33:7, 34:4
green [1] - 35:19
gross [1] - 16:2
growing [1] - 27:5
Guideline [12] - 8:1, 9:5, 23:19, 23:23, 25:21, 25:23, 26:8, 26:10, 30:9, 30:17, 30:18, 33:4
Guidelines [18] - 7:15, 8:13, 8:16, 9:8, 10:17, 12:15, 23:14, 23:17, 23:22, 26:11, 26:15, 26:24, 30:16, 31:6, 31:9, 32:5, 32:21, 33:2
guilty [5] - 4:20, 10:3, 12:6, 23:11, 25:6

**H**

halfway [1] - 29:8
handed [1] - 5:3
happy [2] - 18:12, 18:17
harm [2] - 12:9, 16:4
harsh [1] - 30:5
harsher [1] - 29:10
Hayes [1] - 30:21
head [1] - 10:18
health [1] - 28:5
hearing [1] - 23:4
HEARING [2] - 1:16, 3:2
HELD [1] - 38:15
held [1] - 31:22
help [2] - 18:12, 18:17
Hendricks [1] - 31:10
hereby [2] - 23:6, 33:20

HEREBY [1] - 38:12
herein [1] - 34:3
high [1] - 12:14
higher [1] - 31:19
highlight [4] - 6:17, 7:18, 9:23, 10:21
himself [1] - 27:7
hindering [1] - 7:4
history [9] - 16:10, 25:18, 25:20, 27:1, 28:12, 28:13, 33:1, 33:23, 34:9
holidays [1] - 22:22
honestly [1] - 20:9
Honor [19] - 4:8, 4:11, 4:16, 5:7, 5:19, 5:24, 6:3, 6:17, 14:25, 16:17, 17:25, 19:8, 20:22, 22:11, 26:4, 26:6, 34:14, 36:24, 37:17
HONORABLE [1] - 1:5
hope [2] - 11:12, 35:20
hopefully [1] - 16:12
house [1] - 29:8
Houston [1] - 18:15
Hubbell [1] - 30:21
human [1] - 22:25
hundred [3] - 11:2, 25:25, 34:19
hurdle [1] - 8:25
hurt [1] - 22:19

**I**

illness [1] - 22:23
immediately [2] - 12:9, 34:20
immigration [2] - 29:6, 34:12
implemented [1] - 29:22
import [2] - 23:13, 24:5
importing [1] - 25:2
impose [3] - 21:14, 21:17, 26:15
imposed [7] - 26:3, 29:11, 33:24, 34:8, 34:10, 34:11, 36:4
imprisonment [1] - 34:21
IN [5] - 4:3, 38:10, 38:15, 38:16, 38:19
in-person [1] - 29:23
inaccurate [1] - 24:19
incarcerated [2] - 28:1, 28:6
incarceration [2] - 28:4, 30:5
include [1] - 26:18
included [1] - 36:13
including [5] - 14:8, 22:1, 27:1, 29:7,

29:22
incorporated [2] - 23:6, 33:20
increase [2] - 24:5, 24:8
increased [2] - 31:1, 31:14
indicator [1] - 31:19
indictment [2] - 23:12, 33:11
ineligible [1] - 29:7
infections [1] - 28:7
information [7] - 7:3, 8:24, 17:18, 18:1, 18:14, 23:7, 23:8
initial [3] - 12:5, 12:7, 23:15
Inmate [1] - 34:22
inmates [1] - 30:1
innocent [1] - 16:7
inquired [1] - 32:11
instead [1] - 11:24
institution [1] - 35:1
instructed [1] - 16:20
instructing [1] - 12:20
integral [1] - 15:14
intended [1] - 9:9
interaction [1] - 29:25
interpretation [2] - 7:6, 7:8
INTERPRETER [3] - 2:15, 4:16, 20:2
interpreter [6] - 4:14, 4:17, 19:11, 20:3, 20:18
interrupt [1] - 7:21
involve [1] - 34:3
involved [4] - 13:12, 14:11, 18:9, 30:10
involvement [2] - 14:18, 15:13
involving [2] - 13:23, 32:8
IS [2] - 38:13, 38:16
issue [4] - 9:2, 12:13, 18:2, 24:2
issues [1] - 33:1

**J**

J.P [1] - 2:10
jail [2] - 12:2, 22:19
Josue [2] - 4:6, 33:10
JOSUE [3] - 1:12, 2:10, 38:7
JUDGE [1] - 1:5
judgment [2] - 33:9, 36:13
JUDICIAL [2] - 38:17, 38:20
Julia [1] - 27:23
Julia's [1] - 27:25
July [7] - 4:23, 4:25, 17:14, 17:21, 17:22, 29:16, 33:20

June [1] - 4:21
justify [1] - 33:4

**K**

KALOYANIDES [22] - 2:10, 2:11, 4:11, 5:7, 5:15, 6:3, 6:6, 6:9, 6:13, 6:16, 6:20, 8:4, 8:9, 14:25, 17:24, 19:8, 26:5, 35:2, 35:6, 35:13, 35:18, 37:17
Kaloyanides [5] - 4:12, 5:25, 14:23, 34:24, 37:16
KENDALL [17] - 2:5, 4:8, 5:19, 5:23, 10:16, 16:17, 17:14, 17:22, 18:10, 26:4, 34:14, 36:24, 37:3, 37:7, 37:9, 37:14, 37:16
Kendall [4] - 4:9, 5:16, 34:13, 36:23
Kendall... [1] - 10:15
kids [1] - 12:3
kilogram [1] - 32:13
kilograms [2] - 31:22, 32:8
Kimbrough [1] - 30:12
kind [7] - 6:20, 7:14, 8:11, 13:10, 14:21, 15:11, 17:1
kinds [1] - 27:4
kitchen [1] - 28:20

**L**

lab [1] - 31:12
lab-tested [1] - 31:12
laid [2] - 10:19, 14:17
large [2] - 13:17, 30:9
last [3] - 20:22, 21:6, 21:7
laundering [2] - 14:19, 25:12
LAW [1] - 2:11
law [2] - 7:15, 26:20
lawyer [2] - 19:17, 36:6
lay [1] - 12:17
leadership [3] - 6:24, 13:22, 14:16
leads [1] - 31:7
learn [1] - 23:1
learned [1] - 29:14
least [2] - 24:11, 24:15
led [1] - 31:10
legal [2] - 29:11, 35:19
legally [1] - 35:15
lenity [1] - 11:9
LESS [1] - 38:18
less [5] - 11:11, 16:1,

26:11, 32:13, 34:21
letter [1] - 33:19
level [16] - 8:16, 10:22, 11:6, 11:11, 11:12, 15:13, 15:22, 23:20, 23:23, 24:5, 24:8, 25:16, 25:19, 32:1, 32:4, 32:14
levels [2] - 30:12, 30:16
liberty [1] - 34:4
life [1] - 22:18
line [1] - 13:4
linked [1] - 9:10
live [1] - 27:22
lives [1] - 27:12
located [1] - 19:10
lockdowns [1] - 29:23
LONG [1] - 2:13
looked [1] - 11:5
looking [1] - 10:4
LOS [4] - 1:17, 1:24, 2:7, 4:1
love [1] - 22:20
lower [3] - 8:1, 28:8

**M**

mail [2] - 5:9, 17:15
maintained [1] - 14:10
manager [4] - 13:20, 13:23, 24:9, 24:12
mandated [1] - 34:7
mandates [1] - 33:14
mandatory [3] - 10:10, 15:23, 32:24
MANENA [1] - 2:15
Manena [1] - 4:17
MARIA [3] - 1:21, 38:10, 38:23
marriage [1] - 27:22
married [1] - 27:19
marshals [1] - 20:17
Martell [4] - 13:11, 14:9, 27:20, 27:22
match [1] - 31:2
materials [1] - 36:18
math [1] - 10:16
matter [3] - 18:10, 18:12, 36:5
MATTER [1] - 38:15
matters [2] - 14:15, 17:10
maximum [1] - 25:24
McFarland [1] - 19:9
MDC [1] - 28:25
mean [1] - 18:23
meaningful [1] - 9:19
meaningfully [1] - 23:9
means [1] - 31:18
meant [1] - 19:15
medicine [1] - 28:8
meet [3] - 14:14, 17:1, 20:24

**mentally** [2] - 22:20, 22:23
**mentioned** [1] - 7:10
**Mercedes** [1] - 27:20
**mere** [1] - 7:12
**message** [1] - 9:13
**methamphetamine** [19] - 9:8, 10:23, 10:25, 11:15, 12:22, 16:23, 23:24, 24:6, 25:3, 30:10, 31:9, 31:12, 31:13, 31:17, 31:24, 32:3, 32:9, 32:12, 32:20
**Mexican** [1] - 11:23
**Mexico** [15] - 11:4, 13:17, 13:18, 16:13, 17:7, 18:3, 18:19, 24:25, 25:1, 27:5, 27:13, 27:23, 28:18, 29:14, 29:15
**middleman** [1] - 7:11
**might** [3] - 6:24, 9:1, 35:11
**minimum** [5] - 8:2, 10:11, 15:24, 25:22, 32:24
**minor** [1] - 13:13
**minors** [1] - 10:8
**mistakes** [2] - 22:25, 23:1
**mixture** [2] - 11:5, 31:22
**mom** [1] - 12:3
**money** [3] - 14:19, 25:11, 36:7
**month** [1] - 21:4
**months** [6] - 15:25, 16:11, 20:13, 25:21, 25:22, 33:12
**most** [3] - 15:25, 29:7, 31:17
**mother** [6] - 16:12, 22:1, 27:6, 27:10, 27:11, 27:12
**motion** [2] - 20:4, 37:11
**move** [1] - 37:4
**MR** [36] - 4:8, 4:11, 5:7, 5:15, 5:19, 5:23, 6:3, 6:6, 6:9, 6:13, 6:16, 6:20, 8:4, 8:9, 10:16, 14:25, 16:17, 17:14, 17:22, 17:24, 18:10, 19:8, 26:4, 26:5, 34:14, 35:2, 35:6, 35:13, 35:18, 36:24, 37:3, 37:7, 37:9, 37:14, 37:16, 37:17
**murdered** [1] - 27:16
**must** [3] - 15:5, 26:8, 26:24

## N

**name** [1] - 4:15
**national** [1] - 30:18
**nature** [2] - 26:25, 34:10
**NAYAR** [3] - 1:12, 2:10, 38:7
**Nayar** [2] - 4:5, 33:10
**near** [2] - 35:25
**necessary** [5] - 18:4, 18:7, 26:16, 33:7, 34:4
**need** [7] - 9:13, 19:4, 19:6, 26:18, 27:2, 33:24, 33:25
**needless** [1] - 30:1
**needs** [3] - 17:11, 28:6, 28:9
**never** [2] - 12:2, 14:11
**new** [1] - 28:9
**next** [1] - 11:17
**NORTH** [1] - 2:6
**note** [4] - 5:1, 28:21, 29:2, 29:16
**noted** [2] - 18:7, 30:11
**notes** [1] - 30:8
**nothing** [4] - 6:13, 6:16, 7:10, 17:11
**notice** [1] - 36:7
**November** [1] - 23:17
**number** [2] - 15:10, 16:19, 29:22, 34:10, 34:11
**numbers** [3] - 33:18, 34:6, 34:8

## O

**oath** [1] - 4:18
**Obeso** [2] - 13:11, 14:9
**objections** [1] - 24:10
**objects** [1] - 24:17
**obligation** [1] - 26:14
**obtained** [1] - 28:14
**obviously** [1] - 14:12
**OCEAN** [2] - 2:12
**OCTOBER** [2] - 1:18, 4:1
**October** [2] - 5:1, 21:5
**OF** [14] - 1:2, 1:7, 1:15, 2:4, 2:4, 2:10, 38:5, 38:11, 38:14, 38:17, 38:20
**offense** [20] - 8:15, 10:6, 10:22, 11:6, 11:11, 15:22, 23:20, 23:22, 23:23, 25:17, 25:19, 26:21, 26:25, 30:12, 30:15, 32:1, 32:4, 32:14, 34:11
**offered** [1] - 11:18
**OFFICE** [1] - 2:4
**Office** [1] - 36:14
**officer's** [1] - 33:19
**OFFICIAL** [3] - 1:21, 38:10, 38:23
**old** [4] - 27:5, 27:12, 27:23, 28:3
**oldest** [1] - 27:23
**Olguin** [2] - 22:11
**OLGUIN** [1] - 1:5
**ON** [2] - 2:4, 2:10
**one** [10] - 10:18, 10:19, 11:19, 17:4, 21:22, 25:20, 27:17, 27:18, 28:21, 37:1
**ones** [1] - 22:20
**open** [1] - 37:1
**opening** [1] - 20:20
**operated** [1] - 28:16
**operations** [1] - 14:20
**opportunity** [5] - 5:11, 6:25, 11:19, 21:15, 22:12
**opposite** [1] - 12:8
**order** [7] - 7:14, 9:20, 23:1, 24:20, 34:13, 36:13, 37:11
**ordered** [2] - 33:22, 34:3
**ordinary** [2] - 14:21, 30:6
**originally** [1] - 9:9
**otherwise** [2] - 14:16, 23:3
**outstanding** [1] - 29:2
**overall** [1] - 19:18
**owned** [1] - 28:15

## P

**P.M** [1] - 4:3
**PAGE** [2] - 3:2, 38:16
**pages** [1] - 33:18
**pain** [1] - 28:8
**pandemic** [1] - 29:20
**papers** [8] - 4:24, 4:25, 5:17, 6:11, 7:5, 7:17, 7:20, 17:6
**paperwork** [1] - 5:3
**par** [1] - 13:17
**paragraph** [5] - 24:23, 25:7, 25:10, 25:14, 32:11
**paragraphs** [1] - 24:17
**parents** [1] - 27:25
**parents'** [1] - 28:4
**part** [5] - 5:6, 6:21, 14:6, 17:3, 20:10
**participate** [1] - 36:2
**particular** [3] - 11:14, 13:15, 31:2
**particularly** [1] - 15:12
**parties** [2] - 7:12, 23:8
**parts** [1] - 19:13
**passed** [1] - 27:7
**pay** [3] - 34:17, 34:18, 36:7
**people** [7] - 13:11, 13:19, 13:24, 16:25, 21:25, 22:7, 22:20
**per** [1] - 34:22
**percent** [1] - 11:2
**performance** [2] - 28:24
**perhaps** [1] - 37:4
**period** [1] - 34:21
**permitted** [1] - 36:1
**persistent** [1] - 28:6
**person** [7] - 7:13, 12:21, 15:10, 15:15, 23:2, 29:11, 29:23
**personal** [1] - 30:2
**persuaded** [1] - 33:5
**pertinent** [1] - 19:13
**phase** [1] - 31:5
**phone** [2] - 15:10, 15:20
**physical** [1] - 27:6
**picking** [1] - 13:6
**place** [1] - 31:20
**Plaintiffs** [1] - 1:8
**PLAINTIFFS** [1] - 2:4
**plans** [1] - 28:17
**plea** [7] - 13:1, 13:3, 23:18, 25:9, 32:17, 37:1
**plead** [1] - 12:6
**pled** [4] - 4:20, 10:3, 23:11, 25:5
**plus** [1] - 13:22
**point** [7] - 9:4, 9:12, 9:23, 16:6, 17:5, 22:5, 23:15
**points** [2] - 6:18, 15:2
**policy** [5] - 9:14, 9:18, 26:24, 32:20, 33:2
**poses** [1] - 31:16
**position** [4] - 5:5, 7:16, 10:20, 14:17
**possibility** [1] - 31:1
**potential** [2] - 8:21, 10:4
**pounds** [5] - 10:25, 11:6, 12:22, 16:23, 32:12
**prejudice** [2] - 37:5, 37:13
**present** [4] - 4:12, 5:21, 6:15, 19:22
**presented** [1] - 14:22
**presentence** [10] - 4:22, 5:18, 6:1, 6:12, 18:22, 18:25, 23:4, 23:7, 25:18, 36:16
**PRESIDING** [1] - 1:5
**pressured** [1] - 20:1
**presume** [1] - 26:10
**Pretrial** [1] - 19:19
**pretrial** [1] - 20:15
**pretty** [1] - 21:3
**preventing** [1] - 7:4
**previously** [4] - 4:20, 14:6, 27:19, 28:9
**primarily** [1] - 35:13
**prison** [3] - 10:4, 11:24, 28:18
**Prisons** [6] - 17:16, 18:14, 33:11, 34:22, 36:15, 36:17
**Probation** [2] - 7:9, 36:14
**probation** [1] - 33:19
**probation's** [1] - 24:10
**Probation's** [1] - 24:13
**problem** [1] - 8:22
**problems** [1] - 28:5
**proceed** [2] - 6:21, 8:7
**proceeding** [2] - 23:6, 37:19
**PROCEEDINGS** [2] - 1:15, 38:15
**proceeds** [1] - 13:7
**product** [1] - 30:14
**PROFESSIONAL** [1] - 2:11
**proffer** [5] - 8:22, 14:3, 14:5, 14:7, 14:10
**Program** [1] - 34:23
**program** [2] - 35:9, 36:2
**programs** [2] - 29:7, 35:22
**promote** [2] - 26:20, 26:23
**proper** [2] - 33:13, 36:9
**proposing** [1] - 22:4
**prosecutor** [1] - 22:5
**prostate** [1] - 28:8
**protect** [2] - 26:22, 34:1
**protective** [1] - 30:2
**provide** [3] - 8:25, 26:20, 32:6
**provided** [6] - 7:3, 9:11, 16:19, 20:3, 36:14, 36:16
**providing** [1] - 18:14
**PSR** [12] - 12:19, 14:18, 15:21, 18:1, 24:18, 24:20, 24:21, 25:8, 25:10, 32:10
**psychologist** [1] - 27:18
**public** [2] - 26:22, 34:1
**punishment** [2] - 26:21, 31:3
**punitive** [1] - 30:6
**pure** [4] - 11:1, 11:2, 31:9, 31:18
**purity** [9] - 9:9, 9:22, 11:3, 24:1, 30:10, 31:6, 31:14, 31:19,

44

32:2
**purposes** [6] - 18:8, 26:17, 26:18, 30:19, 33:7, 34:5
**pursuant** [5] - 23:21, 24:4, 24:6, 25:15, 34:22
**PURSUANT** [1] - 38:12
**put** [7] - 9:25, 11:20, 11:25, 18:5, 19:6, 20:11

**Q**

**qualifies** [1] - 14:16
**qualify** [1] - 8:20
**quantities** [1] - 15:19
**quantity** [6] - 9:10, 9:22, 23:25, 30:10, 31:4, 31:14
**quarter** [1] - 34:22
**questions** [2] - 10:12, 10:14
**quickly** [1] - 16:12
**quite** [1] - 7:25

**R**

**ran** [1] - 27:15
**range** [7] - 8:1, 23:19, 25:21, 26:8, 26:10, 30:9, 33:4
**raped** [1] - 27:25
**rare** [1] - 37:3
**rate** [1] - 34:21
**rather** [3] - 5:22, 5:23, 30:22
**RDAP** [2] - 35:9, 36:2
**reach** [1] - 32:18
**read** [5] - 4:21, 6:1, 7:24, 8:3, 10:20
**ready** [1] - 21:12
**really** [5] - 9:4, 10:21, 15:17, 18:11, 20:13
**reason** [6] - 7:20, 12:3, 14:13, 22:15, 26:2, 26:5
**reasonable** [2] - 26:10, 33:12
**reasonably** [1] - 33:22
**reasons** [4] - 11:2, 21:4, 31:15, 36:12
**receive** [2] - 22:16, 28:11
**received** [3] - 15:25, 16:1, 17:15
**recess** [1] - 37:18
**recognized** [1] - 30:17
**recommend** [1] - 35:8
**recommends** [2] - 35:23, 36:1
**record** [12] - 4:15, 5:1, 5:6, 17:10, 18:6,

23:8, 23:18, 24:14, 29:3, 29:17, 32:6, 35:14
**recreation** [1] - 29:25
**reduced** [1] - 29:24
**REDUCTION** [1] - 38:19
**reference** [1] - 33:21
**referring** [1] - 32:10
**refers** [1] - 13:1
**reflect** [2] - 16:15, 26:19
**reflects** [1] - 33:13
**refused** [1] - 14:8
**regarding** [4] - 22:13, 24:18, 25:11, 32:7
**regularly** [1] - 27:13
**REGULATIONS** [2] - 38:16, 38:20
**rehabilitation** [2] - 26:23, 27:24
**relate** [1] - 31:15
**related** [3] - 31:7, 33:23, 36:18
**relating** [2] - 25:12, 28:4
**relationship** [2] - 27:8, 27:16
**release** [5] - 25:23, 33:16, 33:17, 33:22, 34:3
**released** [2] - 16:12, 28:18
**remain** [2] - 32:4, 36:19
**remaining** [1] - 37:12
**remains** [1] - 27:11
**remarkably** [1] - 31:18
**remorse** [1] - 22:14
**remove** [1] - 8:20
**report** [17] - 4:22, 4:23, 5:18, 6:2, 6:5, 6:8, 6:12, 18:22, 18:25, 19:19, 20:16, 23:4, 23:5, 23:7, 36:16, 36:18, 36:21
**report's** [1] - 25:18
**REPORTED** [1] - 38:14
**reporter** [1] - 14:1
**REPORTER** [3] - 1:21, 38:10, 38:23
**REPORTER'S** [1] - 1:15
**reports** [1] - 29:12
**request** [2] - 19:14, 34:25
**require** [1] - 7:15
**required** [2] - 7:3, 15:3
**requires** [1] - 7:15
**respect** [6] - 11:17, 12:10, 12:11, 12:18, 14:3, 26:20
**respectively** [1] - 28:3
**respond** [3] - 5:22,

5:24, 14:24
**responsibility** [2] - 12:9, 25:17
**Responsibility** [1] - 34:23
**responsible** [1] - 13:10
**restrictions** [1] - 29:22
**result** [1] - 29:9
**results** [2] - 25:19, 31:3
**resume** [1] - 28:17
**returned** [2] - 5:10, 16:13
**returns** [1] - 28:18
**review** [6] - 9:21, 18:21, 19:5, 19:7, 20:14, 32:9
**reviewed** [2] - 5:4, 18:24
**revisions** [1] - 24:21
**Rocha** [8] - 12:18, 12:20, 12:21, 12:25, 16:19, 16:21, 16:22, 24:16
**role** [10] - 7:4, 9:2, 12:16, 13:21, 15:6, 24:9, 24:11, 24:18, 24:22, 25:11
**roles** [1] - 13:13
**rule** [1] - 11:9
**rules** [1] - 9:2

**S**

**safely** [1] - 30:3
**safety** [6] - 7:1, 7:23, 8:21, 12:12, 14:5, 14:7
**safety-valve** [4] - 7:1, 7:23, 14:5, 14:7
**Sanchez** [8] - 12:18, 12:20, 12:21, 12:25, 16:19, 16:20, 16:22, 24:16
**sat** [1] - 12:25
**saw** [1] - 27:5
**scenario** [1] - 11:10
**schedule** [1] - 21:3
**scheme** [1] - 30:14
**scope** [2] - 8:24, 14:5
**score** [1] - 25:19
**seal** [1] - 5:2
**second** [1] - 33:15
**SECTION** [1] - 38:12
**Section** [11] - 23:11, 23:14, 24:4, 26:9, 26:12, 30:13, 31:1, 32:5, 33:3, 33:8, 33:14
**section** [1] - 30:20
**sections** [2] - 25:15, 30:16
**Sections** [2] - 23:21, 24:7

**see** [5] - 9:18, 15:8, 20:23, 35:17, 37:2
**seize** [1] - 11:13
**seized** [2] - 10:24, 31:17
**self** [2] - 11:22, 12:1
**self-surrender** [2] - 11:22, 12:1
**sell** [1] - 11:15
**selling** [1] - 28:16
**send** [1] - 9:13
**sentence** [25] - 15:24, 16:2, 16:9, 16:11, 17:19, 21:17, 22:16, 22:24, 26:3, 26:13, 26:15, 26:19, 26:21, 27:2, 29:4, 29:8, 29:9, 29:11, 30:19, 32:25, 33:4, 33:6, 33:12, 33:24, 36:4
**sentenced** [1] - 15:25
**sentences** [5] - 16:3, 27:4, 30:25, 31:9, 31:13
**SENTENCING** [2] - 1:16, 3:2
**sentencing** [16] - 4:24, 4:25, 5:5, 5:17, 6:11, 20:7, 20:10, 21:15, 23:10, 26:17, 30:19, 31:5, 31:7, 31:11, 32:4, 33:8
**Sentencing** [5] - 9:6, 23:14, 26:14, 36:14, 36:17
**September** [1] - 21:4
**serious** [1] - 7:22
**seriously** [1] - 26:13
**seriousness** [1] - 26:19
**serve** [3] - 12:2, 18:18, 29:9
**served** [1] - 18:2
**Service's** [1] - 19:19
**service's** [1] - 20:16
**SESSION** [1] - 4:3
**set** [5] - 26:12, 30:19, 33:8, 33:13, 33:18
**several** [2] - 11:18, 20:8
**severity** [1] - 31:3
**shall** [8] - 33:17, 34:18, 34:20, 36:12, 36:13, 36:16, 36:18, 36:20
**short** [2] - 30:4, 32:22
**shows** [2] - 13:19, 23:25
**siblings** [1] - 28:1
**sick** [1] - 21:7
**significant** [2] - 12:13, 12:14
**significantly** [1] - 29:10
**similarly** [1] - 27:3
**sister** [1] - 27:17

**sisters** [1] - 27:14
**situated** [1] - 27:3
**situation** [2] - 36:25, 37:10
**situations** [1] - 22:22
**so...** [1] - 18:20
**social** [2] - 29:25, 30:3
**society** [2] - 22:13, 31:16
**solely** [1] - 31:12
**someone** [6] - 11:14, 12:23, 12:24, 15:14, 16:10, 16:24
**sometimes** [1] - 13:14
**somewhat** [1] - 37:3
**somewhere** [2] - 18:16, 35:2
**son** [1] - 28:2
**sons** [1] - 27:21
**soon** [1] - 20:20
**sorry** [1] - 24:7
**sort** [1] - 7:16
**source** [1] - 24:25
**SPANISH** [1] - 2:15
**Spanish** [1] - 4:17
**speaks** [1] - 27:13
**special** [2] - 25:24, 34:19
**specific** [4] - 10:12, 18:1, 34:25, 35:1
**specifically** [1] - 16:22
**spent** [1] - 21:10
**spread** [1] - 29:20
**SPRING** [1] - 2:6
**stable** [1] - 33:1
**standard** [1] - 34:6
**start** [2] - 9:15, 10:16
**started** [1] - 4:19
**starting** [1] - 23:15
**state** [3] - 4:7, 4:15, 7:19
**statement** [2] - 24:24, 36:12
**statements** [4] - 24:20, 25:8, 25:11, 26:24
**STATES** [10] - 1:1, 1:7, 1:22, 2:4, 38:5, 38:11, 38:13, 38:17, 38:20
**states** [1] - 32:11
**States** [13] - 4:5, 4:9, 11:22, 13:19, 24:6, 25:1, 25:4, 30:12, 30:21, 31:10, 34:18, 35:1
**status** [4] - 29:6, 29:11, 34:12, 35:18
**statutorily** [1] - 34:7
**statutory** [2] - 8:2, 25:22
**STENOGRAPHICALLY** [1] - 38:14
**step** [1] - 9:20
**still** [7] - 8:21, 8:25,

11:6, 13:17, 15:22, 31:25, 32:23
**straightforward** [1] - 8:22
**strange** [2] - 36:25, 37:9
**STREET** [2] - 1:23, 2:6
**stress** [4] - 9:5, 10:1, 11:17, 14:20
**stricken** [1] - 24:23
**strike** [1] - 25:10
**stuck** [3] - 10:10, 10:11, 11:23
**subject** [1] - 6:23
**submit** [1] - 10:12
**submitted** [1] - 28:22
**subsequent** [1] - 29:5
**substance** [3] - 11:5, 31:23, 33:1
**substances** [3] - 23:13, 25:3, 31:4
**substantial** [1] - 31:11
**substantially** [1] - 31:14
**sufficient** [3] - 23:9, 26:16, 33:6
**suggest** [1] - 8:10
**suggests** [1] - 15:20
**SUITE** [3] - 1:23, 2:7, 2:13
**supervised** [5] - 25:23, 33:16, 33:17, 33:22, 34:3
**supervising** [1] - 12:24
**supervision** [1] - 34:7
**supervisor** [6] - 6:24, 7:4, 8:11, 8:19, 24:9, 24:12
**supervisory** [1] - 7:16
**supply** [1] - 24:25
**support** [4] - 5:4, 7:6, 8:18, 32:7
**supported** [2] - 24:19, 25:8
**supportive** [2] - 21:23, 21:24
**supports** [1] - 24:14
**Supreme** [1] - 30:11
**surgery** [1] - 28:6
**surrender** [2] - 11:22, 12:1
**suspect** [2] - 11:1, 12:4

## T

**technically** [2] - 35:15, 35:18
**telephones** [1] - 29:25
**ten** [1] - 27:7
**term** [2] - 25:23, 33:12
**terms** [4] - 12:23, 33:16, 33:21, 34:2
**tested** [1] - 31:12

**Texas** [1] - 18:16
**text** [1] - 25:2
**THAT** [2] - 38:12, 38:15
**THE** [75] - 2:4, 2:4, 2:10, 4:4, 4:10, 4:14, 4:16, 4:19, 5:13, 5:16, 5:20, 5:25, 6:4, 6:7, 6:10, 6:14, 6:19, 7:19, 8:8, 10:14, 14:23, 15:1, 17:13, 17:20, 17:23, 18:21, 18:23, 18:25, 19:2, 19:4, 19:17, 19:20, 19:23, 19:24, 20:2, 20:4, 20:6, 20:22, 21:2, 21:8, 21:11, 21:12, 21:13, 21:18, 21:20, 21:21, 22:10, 22:11, 23:3, 26:7, 34:15, 35:5, 35:10, 35:17, 35:23, 36:11, 36:12, 37:2, 37:6, 37:8, 37:11, 37:15, 37:18, 38:10, 38:11, 38:13, 38:14, 38:15, 38:16, 38:17, 38:19, 38:20
**therapy** [1] - 28:3
**therefore** [2] - 8:19, 32:1
**thinking** [1] - 20:10
**THIS** [1] - 38:18
**thorough** [1] - 20:8
**three** [3] - 13:23, 24:8, 25:16
**three-level** [2] - 24:8, 25:16
**throughout** [1] - 13:12
**THURSDAY** [2] - 1:18, 4:1
**time-served** [1] - 18:2
**timely** [2] - 25:16, 36:6
**TITLE** [1] - 38:13
**TO** [1] - 38:12
**today** [8] - 5:11, 12:25, 20:19, 22:15, 28:22, 29:14, 31:17, 33:3
**together** [1] - 11:7
**top** [1] - 13:16
**topics** [1] - 14:8
**total** [3] - 8:15, 15:22, 25:19
**totally** [1] - 8:17
**touch** [2] - 11:20, 18:13
**Tovar** [2] - 16:20, 16:23
**Tovar's** [1] - 16:19
**tract** [1] - 28:7
**trafficking** [2] - 14:19, 30:13
**transaction** [1] - 7:12
**TRANSCRIPT** [4] - 1:15, 38:14, 38:16, 38:18

**translated** [1] - 19:14
**translating** [1] - 19:12
**treated** [1] - 28:10
**treatment** [1] - 28:11
**tried** [1] - 21:6
**true** [1] - 14:12
**TRUE** [1] - 38:13
**truly** [1] - 18:16
**truthful** [1] - 14:14
**try** [2] - 14:1, 20:20
**trying** [2] - 11:8, 16:5
**two** [11] - 4:23, 6:20, 7:2, 7:12, 8:6, 11:7, 12:17, 24:5, 27:14, 27:21
**two-level** [1] - 24:5
**type** [1] - 12:22

## U

**U.S** [3] - 16:24, 21:23, 22:2
**U.S.C** [4] - 23:10, 23:14, 26:9, 33:8
**unavailable** [1] - 21:3
**under** [11] - 5:2, 8:16, 9:5, 14:16, 24:12, 30:6, 30:13, 30:16, 31:1, 32:5, 33:5
**undergone** [1] - 27:24
**understood** [1] - 22:17
**unfortunately** [1] - 10:7
**unique** [1] - 30:23
**United** [13] - 4:5, 4:9, 11:22, 13:19, 24:6, 25:1, 25:4, 30:12, 30:21, 31:10, 34:18, 35:1
**UNITED** [10] - 1:1, 1:7, 1:22, 2:4, 38:5, 38:11, 38:13, 38:17, 38:20
**University** [1] - 27:18
**unless** [1] - 10:11
**unnecessary** [1] - 25:14
**unpaid** [1] - 34:20
**unpersuasive** [1] - 32:21
**unrelated** [1] - 17:5
**unwarranted** [2] - 27:2, 31:11
**up** [8] - 13:4, 13:6, 17:16, 20:11, 20:13, 21:10, 27:5, 35:3
**urinary** [1] - 28:7

## V

**valuable** [1] - 21:9
**valve** [6] - 7:1, 7:23, 8:21, 12:12, 14:5,

14:7
**variance** [2] - 24:3, 32:22
**variety** [1] - 21:4
**various** [1] - 30:24
**vehicles** [1] - 28:16
**via** [1] - 25:1
**victim** [1] - 25:25
**violation** [1] - 23:13
**virus** [1] - 29:21
**visa** [1] - 35:20
**visit** [1] - 35:4
**visits** [1] - 29:23
**vs** [2] - 1:10, 38:6

## W

**wait** [2] - 5:22, 5:23
**waive** [1] - 36:9
**waived** [1] - 34:16
**wake** [1] - 26:11
**warranted** [2] - 24:3, 32:23
**warrants** [1] - 15:12
**ways** [1] - 8:6
**week** [2] - 21:6, 21:7
**weight** [1] - 30:14
**weight-driven** [1] - 30:14
**well-aware** [1] - 10:2
**WEST** [2] - 1:23, 2:12
**WESTERN** [1] - 1:3
**wife** [2] - 10:3, 11:21
**wish** [1] - 36:5
**WITH** [2] - 38:16, 38:19
**woman** [1] - 11:25
**word** [2] - 19:13
**words** [4] - 22:8, 22:13, 30:25, 31:13
**works** [2] - 27:18, 28:20
**written** [1] - 22:9

## Y

**yard** [1] - 28:21
**years** [10] - 11:18, 25:23, 27:5, 27:8, 27:12, 27:19, 27:23, 28:3, 28:17, 33:15
**young** [1] - 10:8
**younger** [1] - 28:1
**youngest** [1] - 28:2

## Z

**zero** [1] - 25:19
**Zoom** [1] - 19:10